HARRIET B. GELLER, APPELLANT, v. DEPARTMENT OF THE TREASURY OF NEW JERSEY, DIVISION OF PENSIONS AND ANNUITY FUND, RESPONDENT.

Argued February 18, 1969—Decided May 5, 1969.

592

*Mr. Abraham I. Mayer* argued the cause for appellant (*Messrs. Mayer & Mayer*, attorneys).

*Mr. Theodore A. Winard*, Deputy Attorney General, argued the cause for respondent (*Mr. Arthur J. Sills*, Attorney General of New Jersey, attorney).

The opinion of the court was delivered by

FRANCIS, J. Plaintiff Harriet B. Geller, a teacher in the Newark public school system, challenged a decision of the Board of Trustees of the Teachers' Pension and Annuity Fund which held that she had lost certain pension benefits by reason of her failure to terminate her maternity leave within a statutorily required period of two years. After hearing in the Division of Pensions the decision was affirmed, as it was again thereafter in an unreported opinion of the Appellate Division. We granted certification. 53 *N. J.* 64 (1968).

Plaintiff became a school teacher in Newark in 1930 at age 19. She enrolled in the Pension Fund and agreed to pay the assessed contribution rate of 3.91% of her salary. Except for certain authorized leaves of absence, she has continued as a teacher and pension-fund member down to the present time.

On May 1, 1945, Mrs. Geller took an approved maternity leave and returned to her teaching duties on September 1, 1947, two years and four months later. In 1945 the teachers' pension statute provided:

"The membership of any person in the retirement system shall cease:
(a) If he shall be continuously absent without pay for a period of more than two years;

\*        \*        \*        \*        \*        \*        \*        \*

The board of trustees shall send written notice to the last known address and to the last employer of a member between sixty and fifty days in advance of the date on which his inactive membership shall expire as provided in paragraphs 'a' and 'b' of this section." *R. S.* 18:13–41 as amended *L.* 1944, *c.* 185 § 2 *p.* 693.[1]

Mrs. Geller denied having received any such notice of impending expiration of her membership in the Pension Fund.

---

[1] *R. S.* 18:13–41(*a*) was amended to enlarge this period to three years. *L.* 1947, *c.* 245, § 1(*a*) *p.* 919. The act became effective on June 2, 1947, one month after Mrs. Geller's two-year period under the original act expired.

At the hearing it was shown that the Board records relating to her membership prior to September 1, 1947 had been destroyed in accordance with the usual practice in such cases. It appeared also that the persons who were charged with the *duty of sending the notice* were no longer available as witnesses. However, the Board adduced substantial evidence of the administrative practice routinely followed in 1947 and prior thereto with respect to the sending of such notices. When, in response to receipt of the statutory notice of impending expiration, a teacher acted to assure continuation of membership in the Fund, the Board kept his file open, which file always contained a copy of the notice that had been sent. When, however, the teacher failed to respond to the warning notice, his file was closed and destroyed after a period of time. The Board maintained therefore that since Mrs. Geller's file had been destroyed, the sending of the notice to her had been shown circumstantially. After reviewing the evidence, the Hearing Officer said he could not find that compliance with the statute had not been shown.

In view of his appraisal of the proof, the concurrence of the Board of Trustees after consideration of the exceptions filed thereto by Mrs. Geller, the affirmance by the Appellate Division, and our own examination of the record, we cannot say the conclusion reached is so lacking in substantial support that it should be rejected. But resolution of the notice issue disposes of but one aspect of the pension claim. Subsequent events must be considered.

On October 30, 1947, two months after Mrs. Geller resumed her teaching post, the Fund advised her by letter that her previous membership had expired on May 1, 1947, but since she had certain equities standing to her credit under that membership, a new pension account would be opened for her as of September 1, 1947. However, since her age at the time of the new enrollment would be 36 years, and since the rate of contribution depended upon that age, her new rate would be 6.87% of her wages. As indicated above, her previous rate was 3.91% based upon her age of 19 years when

she became a teacher in 1930. The letter pointed out that on May 1, 1945 she had rendered 13.8 years of service toward her pension, and that the accumulated equities based upon the 3.91% rate of contribution would purchase 7.4 years credit toward a pension in her new account at her then applicable age rate of 6.87% of wages. If she wished to purchase credit for the remaining years of previous total service, *i. e.*, 6.4 years, it would be necessary to contribute at the rate of 8.60% of wages beginning with her November 1947 salary, or to make a lump sum payment of $1,011.02 into her new pension account. Finally the letter stated that if she wished to have the additional 6.4 years service credit at the increased rate, she should notify the Fund and it would so inform her employer-board of education. On the other hand, if she preferred to acquire the credit by the specified lump sum payment, a check should be sent to the Fund.

Without waiting for an answer, the Fund notified the Secretary of the Newark Board of Education of Mrs. Geller's new pension account and that her rate of contribution had been fixed at 6.87% based on her age of 36 years. He was instructed to deduct at that rate retroactively to September 1947.

On November 11, 1947, Mrs. Geller answered the Fund's October 30 letter, saying: "I am interested in receiving full credit for all my years of teaching service. I authorize contribution deductions at the legal rate due in my case." Following this authorization, she went on to explain that she did not understand a number of items in the Fund's letter and would appreciate information as to why she was entitled to only 7.4 years pension credit for her 13.8 years of service, during all of which time (except for three maternity leave years) she made the 3.91% of salary contribution to the Fund. She also inquired as to how the 6.87% and the 8.60% rates of contribution were determined, and whether the 8.60% contribution would be permanent or would be reduced after a period of time.

On November 18 the Fund undertook to reply to the questions posed. The explanation was not as clear as it might have been. But whether clear or not, Mrs. Geller said in her testimony she did nothing further. She assumed no further action was required of her since in her letter of November 11 she had expressed her desire to have full pension credit for all of her years of service and accordingly authorized "contribution deductions at the legal rate due in [her] case." Thereafter, throughout the succeeding years the Newark Board of Education deducted pension contributions at the rate of 6.87% of her salary. This was in accordance with the Fund directive to the Board, which, as set forth above, was given before Mrs. Geller answered the Fund's letter of October 30, 1947.

In early 1966, more than 18 years later, Mrs. Geller inquired of the Fund about early retirement pension benefits. On May 12, 1966 she was informed that she had not purchased the 6.4 years prior service credit, and that to do so now would cost $6,487.17. She protested that decision and asked that the Board of Trustees grant her a formal appeal therefrom. In her letter requesting the appeal hearing she referred to her letter of November 11, 1947 which said: "I am interested in receiving full credit for all my years of teaching service. I authorize contribution deductions at the legal rate due in my case." She then said:

"I assume during the years which followed that the deductions taken from my salary fully covered the payment for the 6.4 years of service credit which I had temporarily lost due to the change in contribution rates between my two Pension Fund memberships. The first inkling which came to my attention that I had not received full service credit was in 1966 when I asked for a determination as to what pension I might draw if I applied for an early retirement * * *."

She contended also that if the Fund did not arrange to collect the increased deductions she had authorized in her letter of November 11, 1947, it was negligent in failing to do so and "it would be most unfair and inequitable to penalize me for something it failed to do." She asked the Fund

to recognize that the cancellation in 1947 of her first membership and the inauguration of the second one resulted in a substantial increase in her rate of contribution without any parallel increase in benefits. In view of all the circumstances she requested the Board of Trustees to rule that on payment of $1,011.02, which the Fund inadvertently failed to collect through her contribution rate, she be given credit for the 6.4 years of service.

As we have noted above, Mrs. Geller was granted the formal hearing, at which her testimony and all of the correspondence referred to were received. Thereafter the Hearing Officer concluded that the authorization of November 11, 1947 to deduct at the legal rate was not clear, and since she had not replied to the Fund's letter of November 18, 1947, it was assumed she did not wish deductions made at an increased rate which would produce pension credit for the 6.4 years of service. The Hearing Officer said further:

"* * * If there was any negligence it would seem to be that of Petitioner in failing to determine definitely whether or not provision was being made for the purchase of the prior service which she allegedly desired to obtain."

On the basis of these findings, the Board adhered to its position that to recapture the 6.4 years credit at this time would require a lump sum contribution of $6,487.17. The Appellate Division's *per curiam* opinion in affirming expressed the view that the record disclosed sufficient substantial and credible evidence to support the administrative determination.

Pensions for public employees serve a public purpose. A primary objective in establishing them is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed. 3 *McQuillin, Municipal Corporations* (3d Ed. Rev. 1963) § 12.141. They are in the nature of compensation for services previously rendered and act as an inducement to continued and faithful service. Being remedial in character,

statutes creating pensions should be liberally construed and administered in favor of the persons intended to be benefited thereby. *McQuillin, supra,* at § 12.143; and see *Adams v. City of Modesto,* 53 *Cal. 2d* 833, 3 *Cal. Rptr.* 561, 566, 350 *P. 2d* 529 (1960); *Giuliano v. Bd. of Trustees of Fireman's Pension F.,* 89 *Ill. App. 2d* 126, 231 *N. E. 2d* 257, 258 (1967); *Flake v. Bennett,* 156 *N. W. 2d* 849, 854 (*Iowa Sup. Ct.* 1968).

▉ Mrs. Geller became a school teacher over 38 years ago. Excluding her two maternity leaves of absence she has taught in the public schools in Newark for 35 years. No suggestion is made by anyone that her service during that long period has not been faithful and competent. It was unfortunate that she overstayed the May 1, 1945 — May 1, 1947 maternity leave by four months (actually about two and one-half months of teaching). As a result, the inexorable operation of *R. S.* 18:13–41 deprived her of the favorable 3.91% pension contribution rate and forced her to rejoin the Fund at the markedly higher rate of 6.87%. This was a severe penalty for one who had no intention of abandoning her role as a teacher.

The Board of Trustees of the teachers' pension fund predicated its decision — that as of May 1966 Mrs. Geller would have to pay $6,487.17 if she wished to purchase the 6.4 years of service credit she lost as the consequence of her tardy return to teaching — on its interpretation of the correspondence between them of October 30 through November 18, 1947. We cannot agree with that result. In our view her letter of November 18 clearly authorized "contribution deductions at the legal rate due" in her case. The direction was given because she was "interested in receiving full credit for all [her] years of teaching service." The questions thereafter posed in the letter did not qualify nor reveal an intention to qualify the authorization. They simply sought information; there was no indication of any intention to delay or to make the authorization depend upon receipt of the information. When the Board answered the questions

in its letter of November 18, it simply furnished the information requested. There is not the slightest indication therein that the matter was open for any further discussion. Nor was there any request in the letter for an additional statement of her position on the matter or even for a reiteration of her November 11 authorization of deductions from salary at the rate which would give her full credit for all the years of her service. The Board closed its letter with an expression of regret at the 1947 expiration of her original pension fund membership and sent along a booklet apparently containing general pension information. It did not ask for a reply.

In her testimony Mrs. Geller explained that she did not think any reply was called for by the November 18 letter. She felt the Board would deduct thereafter from her salary in accordance with her authorization, *i. e.*, at the rate necessary to provide the full credit for all her years of service. A fair inference from the correspondence is that the Newark Board of Education made the first salary deduction at the new rate of contribution in November 1947, more than two months after the opening of the September 1947 school term. The Fund had instructed the Board that the new rate would be 6.87% and that if deductions for September and October had not been made, Mrs. Geller's November salary should be reduced by deductions for the three months at the rate fixed, plus five cents interest. The circumstances make it likely that when her November salary check was received, she assumed it represented the balance due her after deductions at the legal rate were made pursuant to her authorization of November 11.

The Hearing Officer and the Board of Trustees felt that Mrs. Geller's November 11 letter did not contain a clear direction to deduct at the rate which would restore her full years of service credit, and that the Board's November 18 answer called for further instructions from her. Consequently they concluded she was negligent and guilty of *laches* in not realizing over the succeeding years that the deductions

from her salary were not at the rate required to give her the full credit. But, as we have already indicated, the Board's November 18 letter asserted its *fiat* and did not seek what now seems to be thought of as final word from her. In light of the Board's expertise in such matters and Mrs. Geller's inexperience, it is our view that if the Board was not clear as to her authorization, it should have said so and sought clarification. In our judgment the preponderance of the equities are with the teacher and she should not be penalized so grossly at this late date.

Under all of the circumstances a basis for a just result is found in one of the alternatives offered to Mrs. Geller in the Board's letter of October 30, 1947. There it was said that she could achieve full credit for all years of service by a lump sum payment of $1,011.02. She offered to make that payment both before and at the Board Hearing. As we view the case, the equities demand that the offer be accepted, but subject to a condition that there be added to the $1,011.02 "regular" interest from November 11, 1947 to date at the rate contemplated by the statute *N. J. S. A.* 18 :13–112.4m; and see *Linden Board of Education v. Liebman, 56 N. J. Super.* 556, 566 (*Ch. Div.* 1959). If such payment is made or reasonably arranged for, we direct that Mrs. Geller be restored to the pension position she would have achieved had the payment of $1,011.02 been made on November 11, 1947.

The judgments of the tribunals below are reversed subject to the conditions specified.

*For reversal* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN — 7.

*For affirmance* — None.