737 A.2d 1147 (1999)
325 N.J. Super. 90
Marie BUMBACO, Petitioner-Appellant,
v.
BOARD OF TRUSTEES OF the PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1999.
Decided October 7, 1999.
Harold Goldman, Clifton, for petitioner-appellant (Goldman Zolotorofe & Corcoran, attorneys; Mr. Goldman, of counsel and on the brief).
Sherrie L. Gibble, Deputy Attorney General, for respondent-respondent (John J. Farmer, Jr., Attorney General, attorney; Mary C. Jacobson, Assistant Attorney General, of counsel; Ms. Gibble, on the brief).
Before Judges PRESSLER, LANDAU and ARNOLD.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Pursuant to our remand in this matter,[1] respondent Board of Trustees of the Public *1148 Employees' Retirement System (PERS) reconsidered the application of petitioner Marie Bumbaco, widow of Michael Bumbaco, for life insurance benefits. PERS again denied the application, finding no basis for excusing the decedent from his failure during the thirty-one days following his retirement from public employment to have exercised his right, accorded by N.J.S.A. 43:15A-93, to convert his group life insurance, which terminated upon his retirement, into individual insurance policies. Petitioner appeals, and we reverse. We are satisfied that petitioner established, beyond any reasonable dispute, the fact of decedent's incapacity to have exercised his conversion right during the last several weeks of his life, an incapacity which commenced during the thirty-one day period and continued until his death, which occurred within two weeks after the expiration of the thirty-one day period. Accordingly, we conclude that the thirtyone day period was tolled before its expiration and that that tolling continued until the date of decedent's death. Consequently, we hold that the automatic conversion provision of N.J.S.A. 43:15A-93 controls and that petitioner is entitled to life insurance benefits.
Decedent was enrolled in PERS as a municipal employee of Dumont in 1988. He was accorded the required non-contributory group life insurance in the amount of one and a half times annual salary and exercised his option to purchase additional group life insurance in the same amount. Petitioner was his beneficiary. He was diagnosed as suffering from kidney cancer in July 1993, underwent surgery in August 1993, and returned to work in October 1993 following a temporary disability leave. He suffered a recurrence of cancer in January 1994 and never returned to work. He remained on the payroll, however, until the end of April 1994, using up his available sick leave, vacation time, and other paid leave time. Decedent executed his application for retirement allowance on May 12, 1994.
By letter dated June 13, 1994, PERS provided decedent with a statement of his retirement benefits advising him as well that
You may convert your life insurance at retirement by applying to a Prudential Insurance agent for this coverage within 31 days after the effective date of retirement or the date of Board approval, whichever is the later date.
By letter dated June 15, 1994, PERS sent decedent notice of its approval of his retirement application. That letter was postmarked June 20, 1994. Petitioner asserted that although both letters were received, neither was opened until after decedent's death on July 27, 1994. Her explanation was that the physical and emotional burden imposed upon her and her husband by the excruciating process of his dying precluded attendance by either of them to their ordinary affairs.
In any event, it is clear that if the thirtyone day period is calculated from the date of PERS' actual approval of the retirement application, it expired on July 16, and if calculated from the date of PERS' giving of notice thereof, it expired on July 21. Thus decedent died at least six days after the period expired and at most eleven days thereafter. It is also clear that if decedent had died before the period had expired, conversion of the group insurance would have been automatic, N.J.S.A. 43:15A-93 requiring the group insurance to provide that
if a member dies during the 31-day period during which he would be entitled to exercise the conversion privilege, the amount of insurance with respect to which he could have exercised the conversion privilege shall be paid as a claim under the group policy.
Petitioner's initial request of PERS for life insurance benefits under the automatic-conversion *1149 provision of the statute was denied on the mechanistic ground that whatever decedent's condition might have been during the thirty-one day conversion period, his failure to have exercised the conversion right was preclusive, and since there was no dispute of fact that decedent had not exercised that right, PERS denied petitioner a contested case hearing as well. Petitioner appealed.
When we first considered the matter on petitioner's appeal from the PERS determination that she was entitled to no recourse from decedent's failure to exercise the conversion option within thirty-one days after his retirement, we started from the well-settled proposition that since pension laws are remedial social legislation, they must be liberally construed in favor of the persons intended to be benefitted thereby. Steinmann v. State, Dep't. of Treasury, 116 N.J. 564, 572, 562 A.2d 791 (1989); Geller v. Dep't. of Treasury, 53 N.J. 591, 597-598, 252 A.2d 393 (1969). We further held that the statute and the conforming provisions of the group policies, by "affording the insured employee a right to elect continued coverage carry an inference that the employee has the capacity to elect." Bumbaco, supra, at p. 3. We further pointed out that the record then before us "suggests that the employee may have been so incapacitated during the thirty-one day period that he could not exercise his right of election. In view of his terminal illness, he would undoubtedly have exercised his right to convert his life insurance if he was able to appreciate his right to do so." Ibid. We thus remanded for an ALJ hearing for determination of the capacity issue. Following the hearing, the ALJ found that decedent was not mentally incompetent following his retirement and, since the relevant statute was unambiguous, concluded that petitioner was therefore not entitled to the life insurance benefit. PERS agreed. Petitioner has again appealed.
Critical to our decision are the facts respecting decedent's condition and the effect of that condition on his capacity to exercise the option. It is undisputed that decedent was diagnosed as terminally ill in May 1994 and remained at home and in petitioner's care, assisted by home health aides provided by Pascack Valley Hospital's hospice service, until his death. His deteriorating physical and mental condition was described in detail by petitioner's testimony before the administrative law judge (ALJ) and in the reports of hospice personnel that were admitted into evidence. There is no question that decedent's physical condition continued to worsen significantly during the last weeks of the dying process. He was unable to lie down and spent his last two months sitting in a recliner or on a couch, becoming increasingly unable to care for himself in any respect at all until, at last, even his bodily functions had to be attended to by his care-givers. His body was badly swollen and, ultimately, the accumulation of liquid in his body was so severe that it spontaneously discharged through the pores of his skin. His breathing was increasingly difficult. He was medicated with morphine and Percocet, the effect of which is to cause mental confusion. He became increasingly withdrawn and uncommunicative and, towards the end, virtually non-responsive. Petitioner was unable to engage his attention; his physical condition was preemptive and preclusive. The hospice nurse who attended him opined that "Mr. Bumbaco and family were totally immersed in the dying process and unable to focus their attention or energies on any details that did not demand immediate attention." Needless to say, among the many details of daily living to which decedent did not and could not attend was the exercise of his group life insurance conversion option.
In considering this evidence, the ALJ was of the view that petitioner had failed to prove that from the date of his retirement until the date of his death, decedent was mentally incompetent. Accordingly, he found no justification for excusing decedent's *1150 failure to exercise the conversion option within the time prescribed by statute. PERS agreed, but we do not. We are of the view that the ALJ and PERS, in its turn, misconstrued the import of our original opinion and too narrowly defined the concept of incapacity in this context.
As we have noted, the ALJ equated the concept of incapacity, as referred to by us in our remand, with mental incompetence. These are not, however, synonymous terms. "Mental incompetence" has a clear and definite meaning in the law. As we understand the term, it means that a person, by reason of mental disease or defect, is "unfit and unable to govern himself or herself and to manage his or her affairs ..." and hence that a guardian may be appointed for him or her. See R. 4:86-2(b)(6) (specifying the nature of the expert's opinion required in order that an adjudication of mental incompetence be made). But it is clear that "incapacity" has a substantially broader meaning. While that term may not be so precise as mental incompetence and may be definitionally dependent on circumstances and context, we are satisfied that at the least it embraces a combination of physical and emotional burdens and preoccupations which prevent a person from being "mentally and emotionally adjusted to his responsibility of giving notice...." Giacobbe v. Gassert, 29 N.J. 421, 425, 149 A.2d 214 (1959), so holding in respect of the notice-tolling provision of the Unsatisfied Claim and Judgment Act, N.J.S.A. 39:6-61, et seq., 39:6-65. See also S.E.W. Friel Co. v. N.J. Turnpike Auth., 73 N.J. 107, 119-120, 373 A.2d 364 (1977) (physical capacity in the broad sense mandates extension of the ninety-day tort claim notice period of N.J.S.A. 59:8-8).
We appreciate that the statutes considered by the Court in Giacobbe and S.E.W. Friel Co., supra, contained specific tolling or tolling-like provisions and that N.J.S.A. 43:15A-93 does not. But we find controlling in this respect the Supreme Court's analysis in White v. Violent Crimes Compensation Bd., 76 N.J. 368, 388 A.2d 206 (1978), in which the substantive limitation period of N.J.S.A. 52:4B-18, prescribing a notice period for claims against the Violent Crimes Compensation Board, was held, as a matter of legislative policy and fundamental fairness, to be subject to tolling in the case of the physical incapacity of a victim of violent crime despite the Legislature's failure expressly so to provide, physical incapacity being defined consistently with Giacobbe and S.E.W. Friel Co.
We are no less persuaded than we were when we originally considered this case that a retiree's physical incapacity to exercise his conversion option within the statutory thirty-one day period must have a similar tolling effect. As we initially held, the right to exercise the option necessarily implies the capacity to do so. We do not, moreover, understand PERS to argue the contrary. Thus it concedes, illustratively, that if a retiree should lapse into a coma during the thirty-one day period and not emerge therefrom prior to his death, the period would be tolled as of the date of the coma, and the automatic-conversion provision would apply. We see no reason, however, to limit the tolling to ultimate physical incapacity. We are, rather, satisfied that physical incapacity of the nature described by White and Giacobbe, supra, namely a combination of physical and emotional burdens reasonably preventing the retiree from taking the required action, also mandates the tolling consequence.
Nor do we have any doubt that the undisputed facts here established such an incapacity. In this regard, we note that PERS focused on decedent's condition during the entire period from his filing of his retirement application until his death. It may well be that early in his retirement, decedent had the capacity to have acted. He was certainly, as PERS points out, able to complete and file the retirement application in May 1994. What PERS, however, fails to appreciate is that there clearly came a time during the progress of decedent's terminal cancer when he no longer had that capacity. It is from that time, *1151 not from the date of his retirement, that tolling commences. Thus, we think it plain that if that time came during the thirtyone day period, the balance of the period then remaining would be tolled. We need not, therefore, pinpoint the date on which decedent's physical and mental burdens rose to the level of resultant incapacity. That is to say, he died, at most, eleven days after the expiration of the thirty-one day period. If he became physically incapacitated twelve days before his death, i.e., just prior to the end of the thirty-one day period, it would still have been tolled, and there can be no question from this record that decedent was then incapacitated. The point, of course, is that the statute accords a full period of thirty-one days in which to act. Decedent, by reason of his incapacity, was effectively deprived of the benefit of that full time period by his condition. His widow is consequently entitled to tolling of the time limitation, and the automatic conversion provision must therefore be deemed to control. Hence petitioner is entitled to the life insurance benefits she seeks.
The decision of PERS appealed from is reversed, and we remand for calculation and payment of the benefits sought.
NOTES
[1] Bumbaco v. State of New Jersey, Department of Treasury, Division of Pensions and Benefits and Board of Trustees of the New Jersey Public Employees' Retirement System, A-138-95T2 (decided March 12, 1997).