876 A.2d 305 (2005)
378 N.J. Super. 459
George HARRIS, on Behalf of Nancy HARRIS, deceased, Petitioner-Appellant,
v.
BOARD OF TRUSTEES OF the PUBLIC EMPLOYEES' RETIREMENT SYSTEM, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued May 23, 2005.
Decided June 22, 2005.
Samuel J. Halpern, West Orange, argued the cause for appellant.
Susanne Culliton, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney for respondent; Michael J. Haas, Assistant Attorney General, of counsel; Ms. Culliton, on the brief).
Before Judges PETRELLA, YANNOTTI and BILDER.
The opinion of the court was delivered by
*306 PETRELLA, P.J.A.D.
Petitioner George Harris appeals the decision of the Board of Trustees of the Public Employees' Retirement System (Board) denying his request to revise his deceased wife Nancy A. Harris's (decedent) pension option choice from the maximum allowance she had initially selected to the 100% beneficiary option, which would allow Harris to collect her pension after her death, less certain adjustments.
On appeal, Harris argues: the Board's final administrative determination denying his request to reform decedent's pension choice was arbitrary, unreasonable, not based on credible evidence and an abuse of its discretion because of the sudden onset of decedent's catastrophic illness during the critical thirty-day period in which changes to her pension option could be made.
The facts may be briefly stated. On July 19, 2001, decedent applied for early retirement from her position as an Assistant Criminal Division Manager for the Superior Court of New Jersey. She was originally employed on September 1, 1967, and had accumulated over thirty-four years of service credit in the Public Employees' Retirement System (PERS). In her application, decedent chose a retirement date of November 1, 2001, and elected the maximum monthly allowance without exercising any option.
Shortly thereafter, decedent received a notice dated July 21, which was sent to all pending retirees, announcing a new law, P.L. 2001, c. 120, which added new pension payment options that would allow levels of increased lifetime pension to a retiree's beneficiary if the retiree predeceased the beneficiary. In a letter dated July 23, 2001, Harris was advised by the Retirement Bureau that his wife had selected the maximum retirement allowance and that:
Under this choice, the monthly allowance is payable for the lifetime of the member only. Therefore, you will not receive any pension payments in the event of the death of your spouse.
The Board approved decedent's retirement application at its August 15, 2001 meeting. In a letter notifying decedent of its acceptance of her early retirement,[1] the Bureau of Retirements advised decedent that she had selected the maximum retirement option and she had thirty days after either (A) the effective date of her retirement, or (B) the date her retirement was approved by the Board of Trustees, whichever was the later date, to make any changes to her retirement. Because the effective date of her retirement was November 1, 2001, decedent had until December 1, 2001 to change the retirement option she had chosen.
On November 6, 2001, decedent had an X-ray of her chest, which revealed a mass in her left lung. Decedent previously thought she had bronchitis. In the meantime, on November 9, 2001, she completed and signed an authorization from the Division of Pensions and Benefits (Division) for direct deposit of her retirement benefit payments. On November 14, 2001, decedent received the results of a CT scan revealing a four centimeter tumor in the lung. Decedent received a definitive diagnosis of lung cancer on November 20, 2001. A November 28, 2001 CT scan confirmed that the cancer had metastasized to the bones in her hip, causing extreme deterioration of the hip, and decedent was informed that there was nothing that could be done for her cancer. On November 30, 2001, decedent signed her first pension check which was then deposited in her *307 account. On December 5, 2001, decedent underwent an operation to place a pin in her hip to prevent breakage of the bone. After the surgery, decedent was never able to walk again. She was admitted to the hospital on January 15, 2002, where she died on February 4, 2002.
On January 20, 2002, decedent contacted her attorney and had her come to the hospital to execute a new will under which she made specific bequests of personal effects to certain relatives and family members. On February 3, 2002, decedent signed a statement of intention and authorization in front of two witnesses declaring her desire to have her retirement option changed to the 100% beneficiary option, and stating that the effects of her terminal illness on her mind and body rendered her incapable of making the change during the thirty-day period.[2]
Harris forwarded a letter dated March 5, 2002, to the Division requesting that it revise decedent's pension option choice from the maximum allowance to the 100% beneficiary option. This request was administratively denied by the Division in a letter of March 13, 2002. Harris appealed that denial to the Board, which denied his appeal on July 22, 2002. The Board thereafter approved Harris's request for a formal hearing and referred the matter to the Office of Administrative Law as a contested case.
After a hearing before an Administrative Law Judge (ALJ), an Initial Decision was issued on December 10, 2003, which granted Harris's request to convert the decedent's pension to the lifetime pension beneficiary option. The ALJ noted the following testimony by Harris describing the events leading to the discovery of decedent's cancer and her mental state throughout that period of time to support the Initial Decision:
On July 29, 2001 Employee entered Morristown Hospital for a leg condition. On November 6, 2001 an X-ray showed a mass in the lung [sic]. The family physician scheduled a CAT Scan for November 14, 2001, which revealed a tumor in the lung. On November 20, 2001 the tumor was diagnosed as malignant; and it was on this same date after learning the cancer had metastasized into the bones that Employee knew she was terminal. Employee entered a period of depression even though she managed to undergo treatment and receive friends and family. On November 28, 2001 another CAT Scan confirmed that the cancer had moved to the leg and hip. Employee had an operation on December 5, 2001 to place a pin in the hip to prevent breaking; she never walked again after the surgery. Between January 3, 2002 and January 15, 2002 Employee was at home to rest. On January 3 and 17, 2002 Employee had chemotherapy at Sloan Kettering Hospital.
Hospice care commenced in January 2002 when Employee's lungs continued to fill with water; pain killers and the morphine drip were used more frequently, and a nebulizer had to be administered several times daily. Around January 15, 2002 Employee told husband/Petitioner that she had selected a plot at Glendale Cemetery and had selected her burial clothes....
The Board, however, on March 18, 2004, reviewed and rejected the ALJ's Initial Decision, and determined that the ALJ failed to consider what it considered certain material facts, particularly that: (1) *308 decedent executed a direct deposit slip on November 9, 2001, after the initial discovery of the lump; (2) decedent signed and deposited her first pension check on November 30, 2001, two days before the end of the statutory period; and (3) decedent received pension checks in November, December, January and February of 2001-2002. The Board concluded that these so-called material facts conclusively demonstrated that the decedent "was not incapacitated to the extent that she had ceased to conduct her daily affairs during the thirty-day statutory period to cancel her retirement prior to it becoming due and payable."
Harris contends that the Board's final determination denying the request to change decedent's pension option was arbitrary, unreasonable and not based on credible evidence. He argues that the sudden onset of decedent's catastrophic illness during the thirty-day statutory period in which changes to her pension could be made was so overwhelming so as to preclude her ability to timely file that application.
In reviewing the final determination of an administrative agency, we generally defer to the agency's findings of fact, unless those findings are not supported by sufficient, credible evidence in the record. Kossup v. Board of Trustees, Police and Fireman's Retirement System, 372 N.J.Super. 468, 472, 859 A.2d 721 (App.Div.2004). See also Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 586-587, 538 A.2d 794 (1988); Henry v. Rahway State Prison, 81 N.J. 571, 579-580, 410 A.2d 686 (1980). We will also reverse an agency's determination if it is arbitrary, capricious or unreasonable. Dennery v. Bd. of Ed. of the Passaic County Regional High School District # 1, 131 N.J. 626, 641, 622 A.2d 858 (1993). Furthermore, we are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue." Mayflower Sec. v. Bureau of Sec., 64 N.J. 85, 93, 312 A.2d 497 (1973).
Our review of this case is guided by an understanding that pensions for public employees serve an important public purpose. They are established and maintained to induce qualified persons to enter and continue in public employment and they represent compensation for services previously rendered. Steinmann v. State, Dep't. of Treasury, 116 N.J. 564, 572, 562 A.2d 791 (1989) (quoting Geller v. Dep't. of Treasury, 53 N.J. 591, 597-598, 252 A.2d 393 (1969)). Considering the remedial character of the statutes that create these pensions, they "should be liberally construed and administered in favor of the persons intended to be benefited thereby." Ibid. See also Bumbaco v. Board of Trustees of the Public Employees' Retirement System, 325 N.J.Super. 90, 94, 737 A.2d 1147 (App.Div.1999), certif. denied, 163 N.J. 75, 747 A.2d 283 (2000).
Under the particular facts of this case, we believe that the legislative purpose underlying the statutory scheme establishing and maintaining pensions for public employees is better served by a tolling of the thirty-day pension change period created by N.J.A.C. 17:2-6.3(a). White v. Violent Crimes Compensation Board, 76 N.J. 368, 379, 388 A.2d 206 (1978). As we noted in Bumbaco, "the right to exercise [a pension] option necessarily implies the capacity to do so." Bumbaco, supra (325 N.J.Super. at 97, 737 A.2d 1147). In that case, we concluded that the decedent's combination of physical and emotional burdens arising from terminal cancer prevented him from taking the required actions to convert his group life insurance into individual insurance policies during the required thirty-one days following his retirement. Ibid. We found that the decedent's physical incapacity during *309 the required thirty-one-day option period deprived him of the full benefit of that time period, and held that his wife was entitled to a tolling of the time limitation to permit her to convert the insurance. Id. at 98, 737 A.2d 1147. We are satisfied that the facts here require a similar result.
The Board's determination that the facts in this case were insufficient to establish that the decedent's sudden onset of terminal cancer during the thirty-day period incapacitated her and prevented her from taking the required action to change her pension option is not supported by the record. The Board went wide of the mark in so concluding. State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964); Formosa v. Equitable Life Ass. Soc'y., 166 N.J.Super. 8, 20, 398 A.2d 1301 (App.Div.), certif. denied, 81 N.J. 53, 404 A.2d 1153 (1979). Essentially, the Board relied on insignificant facts relating to a routine receipt, signing and deposit of checks. In reality, the Board presumably was requiring that the checks should not have been negotiated or deposited and that doing so was somehow a complex undertaking. In actuality, a check can be deposited to a payee's account with almost any or no endorsement.
The evidence before the ALJ clearly established that the decedent was diagnosed with terminal cancer during the thirty-day period and that she was deprived of the benefit of the full time to make the desired changes to her pension. There was uncontroverted evidence, including medical testimony to that effect presented to the ALJ. PERS presented no evidence, and merely one fact witness who was employed by the Division of Pensions who testified solely to the chronology shown by its records, including the issuance and negotiation of checks. The Board's rejection of the ALJ's findings and Initial Decision was arbitrary. As a result, decedent's husband is entitled to a tolling of the time limitation and he must be permitted to make the change requested by his wife on the day before her death.
The decision of the Board is reversed, and we remand for calculation and payment of the benefits sought, subject to any appropriate credits or adjustments.
NOTES
[1] Decedent at retirement was age fifty-seven.
[2] This statement was not provided to the Division at that time. The Division was not notified of the decedent's desire to change her retirement option until Harris's letter of March 5, 2002.