**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4086-18

WILLIAM ROGERS,

     Petitioner-Appellant,

v.

DEPARTMENT OF THE
TREASURY, POLICE AND
FIREMEN'S RETIREMENT
SYSTEM OF NEW JERSEY,

     Respondent-Respondent.

_____

Argued March 24, 2021 – Decided April 21, 2021

Before Judges Geiger and Mitterhoff.

On appeal from the Board of Trustees of the Police and Firemen's Retirement System, Department of Treasury, PFRS No. 3-77534.

Samuel M. Gaylord argued the cause for appellant (Gaylord Popp, LLC, attorneys; Samuel M. Gaylord, on the brief).

Jeffrey Padgett, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant

Attorney General, of counsel; Jeffrey Padgett, on the brief).

PER CURIAM

Appellant William Rogers appeals from a final agency decision of respondent Board of Trustees, Police and Firemen's Retirement System (the Board) that denied his request to receive additional membership credit relating to a lump sum payment he received for severance pay under the terms of a settlement agreement with his former employer, the Borough of Wenonah (the Borough), where he served as Chief of Police until May 31, 2018, the date the Wenonah Police Department was dissolved and his position eliminated, pursuant to a shared services agreement with Mantua Township. We affirm.

Rogers was enrolled in the Police and Firemen's Retirement System (PFRS) on March 1, 1995, the date he began working for the Borough as a police officer. He advanced through the ranks to the level of Chief of Police.

The Borough entered into a shared services agreement with Mantua.[1] On April 27, 2018, Rogers received written notice from Wenonah's mayor concerning the adoption of an ordinance that implemented the Borough's decision to disband the Wenonah Police Department and eliminate the position

---

[1] The record does not include the shared services agreement.

of Chief of Police effective May 31, 2018.  At that point, Rogers had served in the Wenonah Police Department for twenty-four years and three months.

Rogers and his union filed a Law Division action against the Borough regarding his employment.[2]  On June 15, 2018, Rogers and the Borough entered into a settlement agreement.  Under the terms of the settlement agreement, the Borough agreed to:  (1) pay Rogers "severance pay of five months payable in a lump sum equal to $39,506.33"; (2) "make all necessary contributions into the [PFRS] (both employer and employee contributions) so that Chief Rogers . . . can obtain [twenty-five] years of service and qualify for his pension"; and (3) provide "medical benefits as set forth in his employment contract as if he had retired in good standing with [twenty-five] years of service."  In return, Rogers was "required to continue to provide reasonable cooperation to the Borough through February 2019 regarding any issues that arise in the transition of police services provided to the Borough."[3]

---

[2]  The record does not include the pleadings filed or orders entered in the Law Division action.  Nor do the parties set forth the causes of action alleged in the complaint.

[3]  Rogers does not argue that he provided any services to the Borough after May 31, 2018.  The record lacks any evidence that he did.

A-4086-18

Following execution of the settlement agreement, Rogers's attorney wrote to the Division of Pensions and Benefits (the Division) requesting that it "provide the dollar amount necessary to purchase service credits from June 1, 2018 through February 28, 2019[,]" to facilitate the Borough's "lump sum payment to the PFRS[.]" In response, the Acting Chief of the Division's Reporting Bureau advised that the Division "cannot accept this settlement agreement to provide[] creditable service for pension purposes under PFRS, as the agreement violates . . . regulations covering [m]embership [e]ligibility and [c]reditable [c]ompensation under the retirement program."

The Acting Chief noted that N.J.A.C. 17:4-2.1(a) defined "eligible position" as "[a]ll employees actively employed in positions meeting the statutory definition 'police officer' or 'firefighter' found at N.J.S.A. 43:16A-1(2)(a) and (b) shall be members of the PFRS of New Jersey." He found that "[d]ue to the shared services agreement[,] . . . Roger's service was no longer needed after May 31, 2018. At that point Mr. Rogers was no longer an employee of the now dissolved Police Department. . . ." The Acting Chief noted that N.J.A.C. 17:4-4.1(a)(1) defined "base salary" as "the annual compensation of a member, . . . which is paid in regular, periodic installments in accordance with the payroll cycle of the employer." He explained that "[d]ue to the absence of

eligible employment, there is no base salary on which the 'employer' can withhold pension contributions to be remitted to the Division . . . and Mr. Rogers [was] inactive as of June 1, 2018."

Rogers appealed that determination. The Board issued a December 14, 2018 initial decision upholding the Division's determination that Rogers "is not eligible for the additional service credit under the settlement agreement." Relying on N.J.S.A. 43:16A-1(7), (8), (14), and (26)(a) and N.J.A.C. 17:4-4.1(a)(2), the Board determined that "[b]ecause his employment terminated on May 31, 2018, he was no longer employed as a Police Chief and therefore no additional service credit [could] accrue to Mr. Rogers's account after that date."

The Board also noted:

> At the time that his position was eliminated[,] his PFRS membership account only reflected [twenty-four] years and [three] months of membership service. Therefore, he did not have the requisite number of years to qualify for a [s]pecial retirement. The settlement agreement intended to provide for [five] additional months which only would have brought his PFRS membership total service to [twenty-four] years and [eight] months, which is still [four] months short of the [twenty-five] years needed to qualify for [s]pecial retirement.

Rogers appealed that decision and requested that the matter be transferred to the Office of Administrative Law. The Board denied Rogers's request for an administrative hearing because it "was able to reach its findings of fact and

5

conclusions of law" based on the PFRS's "enabling laws and regulations and without the need for an administrative hearing."

The Board issued an April 10, 2019 final decision explaining "that the statutes and regulations governing the PFRS[] do not permit the Board to grant [Rogers's] request to provide [him] with additional service credit for the lump sum payment he received under the settlement agreement[.]" In reaching that decision, the Board again relied on the following definitions: "service," "creditable service," "earnable compensation," and "compensation" found in N.J.S.A. 43:16A-1(7), (8), (14), and (26)(a); "base salary" and "extra compensation" found in N.J.A.C. 17:4-4.1(a)(1) and (2); and "eligible position" found in N.J.A.C. 17:4-2.1(a). The Board reasoned:

> There is no dispute that Mr. Rogers'[s] employment terminated with the dissolution of the Wenonah Borough Police Department effective May 31, 2018.
>
> Because Mr. Rogers could not provide any service as a police officer to Wenonah after this date, the PFRS[] Board finds that based on the clear and unambiguous statutory and regulatory language, the Board is without authority to allow your request for additional membership service under the settlement agreement. The PFRS[] Board's determination is further consistent with In re Puglisi, 186 N.J. 529 (2006). . . . In Puglisi, the court determined that Puglisi was not eligible for pension service credit on a salary increase that was part of [a] settlement agreement,

A-4086-18

where he stopped working and started terminal leave at the same time as his promotion. 186 N.J. at 534. The increase was in anticipation of retirement. Ibid. . . . Similarly, as a result of a settlement agreement, Wenonah is attempting to pay Mr. Rogers for service he has not and cannot render, after the dissolution of the Wenonah Borough Police Department, for the purpose of increasing Mr. Roberts' pension service credit to make him eligible for a special retirement benefit based on [twenty-five] years of service.

This appeal followed. Rogers argues:

CHIEF ROGERS COULD PROVIDE SERVICE TO WENONAH THROUGH FEBRUARY 2019 ALLOWING THE BOARD TO GRANT ADDITIONAL MEMBERSHIP SERVICE CREDIT TO HIS PENSION.

Judicial "review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An administrative agency's final quasi-judicial decision will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Herrmann, 192 N.J. at 27-28. Appellant bears the burden to demonstrate grounds for reversal. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002) (citing Barone v. Dep't of Human Servs., Div. of Med. Asst., 210 N.J. Super. 276, 285 (App. Div. 1986)).

7

We "afford substantial deference to an agency's interpretation of a statute that the agency is charged with enforcing." Richardson v. Bd. of Trs., Police & Firemen's Ret. Sys., 192 N.J. 189, 196 (2007) (citing R & R Mktg., L.L.C. v. Brown-Forman Corp., 158 N.J. 170, 175 (1999)). "Such deference has been specifically extended to state agencies that administer pension statutes," because "a state agency brings experience and specialized knowledge to its task of administering and regulating a legislative enactment within its field of expertise." Piatt v. Police & Firemen's Ret. Sys., 443 N.J. Super. 80, 99 (App. Div. 2015) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). We will not substitute our judgment for the agency's even though we might have reached a different conclusion. In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 483 (2007)).

While pension statutes "must be liberally construed in favor of the persons intended to be benefitted thereby," Bumbaco v. Bd. of Trs., Pub. Emps.' Ret. Sys., 325 N.J. Super. 90, 94 (App. Div. 1999) (citations omitted), "eligibility is not to be liberally permitted," Smith v. State, Dep't of Treas., 390 N.J. Super. 209, 213 (App. Div. 2007). "Instead, in determining a person's eligibility to a pension, the applicable guidelines must be carefully interpreted so as not to

'obscure or override considerations of . . . a potential adverse impact on the financial integrity of the [f]und.'" Ibid. (alterations in original) (quoting Chaleff v. Teachers' Pension & Annuity Fund Trs., 188 N.J. Super. 194, 197 (App. Div. 1983)).

We have carefully considered Rogers's arguments and thoroughly reviewed the record. We are satisfied the Board's decision is supported by substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable. Nor was the decision contrary to express or implied legislative policies. See In re Juvenile Det. Officer, 364 N.J. Super. 608, 614 (App. Div. 2003) (citations omitted). We affirm the Board's determination substantially for the reasons set forth in its April 10, 2019 final decision. We add the following comments.

In 2007, the Legislature enacted the Uniform Shared Services and Consolidation Act, N.J.S.A. 40A:65-1 to -35, to facilitate shared services between municipalities "to reduce property taxes through the reduction of local expenses," N.J.S.A. 40A:65-2(c). The Act permitted municipalities to enter into agreements to share law enforcement services. N.J.S.A. 40A:65-8. When the shared services agreement results in a single chief of police, the chief whose position is eliminated "may elect either: (1) to accept a demotion of no more

than one rank without any loss of seniority rights, impairment of tenure, or pension rights; or (2) to retire from service." N.J.S.A. 40A:65-8(b). Here, Rogers chose to retire. The Act does not permit the retiring chief to accrue creditable service beyond the date his position is eliminated or otherwise obtain an unearned pension benefit.

We need look no further than the express terms of the settlement agreement. Rogers received five months' worth of lump sum severance pay, and the related PFRS pension contributions, "so that he can obtain [twenty-five] years of service and qualify for his pension." This transparent attempt to add additional service credit after his position was eliminated and the police department was disbanded amounted to nothing more than an unenforceable ad hoc effort to obtain special retirement pension benefits.[4] The Board correctly determined that Rogers could not receive additional service credit for job duties he could no longer perform after his position was eliminated and the police

---

[4] Rogers was eligible for a service retirement, which affords a fifty percent pension benefit with twenty years of creditable service. N.J.S.A. 43:16A-5(3). Twenty-five years of creditable service qualifies a member for a special retirement, which provides a sixty-five percent pension benefit. N.J.S.A. 43:16A-11.1. The Board found that the additional five months of severance pay would still not qualify Rogers for a special retirement since it "only would have brought his PFRS membership total service to [twenty-four] years and [eight] months."

department no longer existed. Moreover, the lump sum severance benefits do not qualify as "base salary" within the meaning of N.J.A.C. 17:4-4.1(a)(1), because it was not "paid in . . . periodic installments in accordance with the payroll cycle of the employer."

The use of the term "severance pay" in the settlement agreement is telling. "Severance pay" is defined as "[m]oney (apart from back wages or salary) that an employer pays to a dismissed employee." Black's Law Dictionary 1651 (11th ed. 2019). It is not used to denote "base salary."

The five months of lump sum severance pay that Rogers received under the settlement agreement was an "individual salary adjustment" made "primarily in anticipation" of his retirement within the meaning of N.J.S.A. 43:16A-1(26) and was a direct result of the elimination of his position when the Wenonah Police Department was disbanded. See In re Puglisi, 186 N.J. at 534 (reaching the same result where the appellant's promotion and resulting salary increase were made "primarily in anticipation of his retirement" after "he stopped working as a police officer and started receiving terminal leave payments at the same time he was promoted"). As explained by the Court in Puglisi, while the severance pay and payment of pension contributions "may have served other objectives, such as settling his claims against [the Borough]," these actions were

clearly undertaken in anticipation of Rogers's retirement and receipt of enhanced special retirement pension benefits.  Ibid.

The Board properly used May 31, 2108, the date the Wenonah Police Department was disbanded, and the Chief of Police position was eliminated, as the end of his "service as a policeman" and "creditable service."  N.J.S.A. 43:16A-4(a).  The denial of additional service credit was consistent with the underlying statutes and regulations and the public policy on eligibility for pension benefits.

Rogers's reliance on In re Snellbaker, 414 N.J. Super. 26 (App. Div. 2010) is misplaced.  In Snellbaker, we reversed the Board's determination that the PFRS member's retroactive salary increase was not creditable compensation for retirement benefits when the member "was entitled to the compensation as a matter of law" and the payment was done to correct "the City's failure to comply with N.J.S.A. 40A:14-179," which "requires that the chief be paid a higher base salary than the next highest ranking officer throughout his tenure."  Id. at 30, 31, 39.  The controlling facts in Snellbaker are obviously distinguishable.  Our holding in Snellbaker does not apply to the severance pay Rogers received.

At oral argument before this court, Rogers argued for the first time that but for the information provided during communications with a Division

representative, he would have elected to accept a demotion and worked for the Mantua Police Department for nine months of additional creditable service pursuant to N.J.S.A. 40A:65-8(b). The record does not reflect these alleged facts, nor was the issue of estoppel briefed by Rogers. "An issue not briefed on appeal is deemed waived." Sklodowsky v. Lushis, 417 N.J. Super. 648, 657 (App. Div. 2011) (citations omitted). "Because this issue was not raised until oral argument before us, we do not decide the matter on that basis." Clarksboro, LLC v. Kronenberg, 459 N.J. Super. 217, 222 (App. Div. 2019).

Rogers's arguments lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(D) and (E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION