**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3332-21

DENNIS MCCOOL,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued April 29, 2024 – Decided May 14, 2024

Before Judges Mawla, Marczyk, and Vinci.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx1211.

Samuel Michael Gaylord argued the cause for appellant (Szaferman Lakind Blumstein & Blader, attorneys; Samuel Michael Gaylord, on the brief).

Matthew C. Melton, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Janet Greenberg Cohen, Assistant

Attorney General, of counsel; Matthew C. Melton, on the brief).

PER CURIAM

Petitioner Dennis McCool appeals from the May 19, 2022 final agency decision of the Board of Trustees ("Board") of the Public Employees' Retirement System denying his application for accidental disability retirement ("ADR") benefits. Having considered the record and applicable legal standards, we affirm.

McCool was employed as an emergency medical technician ("EMT") by the Voorhees Township Fire Department from 2006 to 2019, when he retired. On January 9, 2018, McCool and his partner responded to a call for assistance. When they arrived at the scene, they found an elderly man sitting in the passenger side of a vehicle at the base of his driveway. The "driveway was a solid sheet of ice up[]hill," and the patient could not walk up the driveway to his house. Prior to their arrival, the patient attempted to make his way up the driveway, slipped, and fell outside the vehicle. The patient declined medical attention but requested assistance to get up the driveway and into his residence.

McCool and his partner assisted the patient "up the[] walkway to [his] front door into the residence." While his partner was attending to the patient, McCool "offered to the elderly woman, the wife of the [patient,] to spread some

salt down their driveway, [be]cause it was a solid sheet of ice and she had some salt in her garage." After he salted the driveway, McCool went back inside the residence where his partner was finalizing the accident report. McCool did not salt the walkway leading to the residence.

To leave the scene, McCool and his partner "had to go back down the walkway that [they] assisted the patient up through[,] which was covered in snow and ice." As they were doing so, McCool warned his partner "to be careful not to slip and not long after [he] said that, [McCool] slipped." McCool "did[ not] fall . . . [he] caught [himself]." According to McCool, his "foot went out and [he] dropped down but . . . [he] caught [himself] with balance." McCool continued back to the ambulance.

He returned to the station and was not experiencing "any trouble." He finished his shift, responded to other calls, and returned home where he slept for a few hours. When McCool woke, "[his] feet were numb and tingling, [his] right leg . . . would[ not] work. So, [he] couldn't get out of bed." He was not scheduled to work the following two days. During that time, he did not report any injury. He "assumed [he] just tweaked a muscle or something" and used a heating pad. McCool's condition did not improve, and he called out sick for his

3

next shift. His supervisor contacted him to find out why he called out, and McCool explained what happened.

Prior to working as an EMT, McCool was a volunteer firefighter. He worked as an emergency responder for over thirty-five years. McCool was trained on how to respond in emergency situations involving snowy and icy conditions and frequently responded to emergencies in such conditions. He was trained to be cautious on snow and ice and to call the fire department for assistance if there was "too much snow and ice," which he explained to be "anything over two feet or so."

On January 4, 2019, petitioner applied for ADR benefits. In his application he wrote:

> On January 9 2018[,] I slipped on icy snowy steps returning to vehicle from assisting a patient into residence[,] which resulted in a large piece of disc shearing off and compressing [my] sciatic nerve. I then underwent multiple surgeries and now have permanent nerve damage[,] a spinal nerve stimulator[,] and limited mobility.

On October 17, 2019, the Board denied McCool's application for ADR benefits because his disability was not the result of a traumatic event that was "undesigned and unexpected." After McCool contested the Board's denial, a

A-3332-21

hearing was conducted in the Office of Administrative Law at which McCool testified as the only witness.

Following the hearing, the Administrative Law Judge ("ALJ") affirmed the Board's denial of ADR benefits in a written decision. The ALJ found McCool's disability was not the direct result of a traumatic event that was undesigned and unexpected. The ALJ explained:

> On the day of the [i]ncident, [McCool] and his partner arrived at the scene and saw that the property owner's driveway was a solid sheet of ice. This could not be considered unexpected, because petitioner was trained to be aware of such conditions, and the [i]ncident took place in the month of January. That the icy condition was one to be taken seriously was brought to petitioner's attention because the property owner told petitioner and his partner that he had slipped on the icy driveway. [McCool] testified that he had been using extra caution in order to assist the property owner.

The ALJ continued:

> [McCool] was trained on dealing with the effects of winter weather; he was called to an emergency situation stemming from icy and snowy winter conditions; the property owner told him about the icy conditions; [McCool] himself identified the snowy and icy conditions, warned his partner to use caution, and even salted part of the property, all signs that the icy conditions causing [him] to slip were not undesigned and unexpected.

5

A-3332-21

On May 19, 2022, the Board issued its final agency decision adopting the ALJ's decision. On appeal, McCool argues the Board improperly determined the incident that caused his disability was not undesigned and unexpected. Specifically, McCool argues his disability was the "unintended consequence of a[] clearly 'external' event occurring[] at the time he was working, [which] means the incident meets the definition of undesigned and unexpected." McCool contends, "[a]lthough he may have been aware that the conditions were icy, he would have had no way to know there was ice under the snow where he fell." McCool also argues the Board's decision violated public policy and the Legislative intent of the pension statute.

"Our review of administrative agency action is limited." Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011) (citing In re Herrmann, 192 N.J. 19, 27 (2007)). "An agency's determination on the merits 'will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo, 206 N.J. at 27).

"Arbitrary and capricious action of administrative bodies means willful and unreasoning action, without consideration and in disregard of

circumstances. Where there is room for two opinions, action is [valid] when exercised honestly and upon due consideration, even though it may be believed that an erroneous conclusion has been reached." Worthington v. Fauver, 88 N.J. 183, 204-05 (1982) (alteration in original) (quoting Bayshore Sewerage Co. v. Dep't Env't Prot., 122 N.J. Super. 184, 199 (Ch. Div. 1973)).

In determining whether an agency's decision is arbitrary, capricious, or unreasonable, we examine: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether in applying the law to the facts, the "agency clearly erred in reaching [its] conclusion . . . ." In re Stallworth, 208 N.J. 182, 194 (2011) (quoting In re Carter, 191 N.J. 474, 482-83 (2007)).

In Richardson v. Board of Trustees, Police & Firemen's Retirement System, 192 N.J. 189 (2007), the Supreme Court clarified the meaning of the term "traumatic event" under N.J.S.A. 43:16A-7(1). A claimant for ADR benefits must establish:

>  (1) that [they are] permanently and totally disabled;
>
>  (2) as a direct result of a traumatic event that is
>
>>  a. identifiable as to time and place,
>>
>>  b. undesigned and unexpected, and

A-3332-21

c. caused by a circumstance external to the member (not the result of pre-existing disease that is aggravated or accelerated by the work);

(3) that the traumatic event occurred during and as a result of the member's regular or assigned duties;

(4) that the disability was not the result of the member's willful negligence; and

(5) that the member is mentally or physically incapacitated from performing his usual or any other duty.

[Id. at 212-13 (emphasis added).]

As the Court explained in Richardson, "[t]he polestar of the inquiry is whether, during the regular performance of his job, an unexpected happening, not the result of pre-existing disease alone or in combination with the work, has occurred and directly resulted in the permanent and total disability of the member." Id. at 214. "Undesigned and unexpected" requires "an unanticipated consequence" that "is extraordinary or unusual in common experience." Id. at 201 (quoting Russo v. Tchrs.' Pension & Annuity Fund, 62 N.J. 142, 154 (1973)). The evaluation of the event is not based on results but instead on what the injured person was doing at the time. Russo, 206 N.J. at 18.

In Mount v. Board of Trustees, Police & Firemen's Retirement System, 233 N.J. 402, 427 (2018), the Court explained the analysis requires "the Board and a reviewing court [to] carefully consider not only the member's job

responsibilities and training, but all aspects of the event itself. No single factor governs the analysis." In <u>Richardson</u> the Court explained, "[a] policeman can be shot while pursuing a suspect; a librarian can be hit by a falling bookshelf while re-shelving books; a social worker can catch her hand in the car door while transporting a child to court." 192 N.J. at 214. "[T]hat a member is injured while performing his ordinary duties does not disqualify him from receiving accidental disability benefits; some injuries sustained during ordinary work effort will pass muster and others will not." <u>Ibid.</u>

Pension statutes are "remedial in character" and "should be liberally construed and administered in favor of the persons intended to be benefited thereby." <u>Geller v. Dep't of Treasury of N.J., Div. of Pensions & Annuity Fund</u>, 53 N.J. 591, 597-98 (1969). However, "eligibility is not to be liberally permitted." <u>Smith v. State, Dep't of Treasury, Div. of Pension & Benefits</u>, 390 N.J. Super. 209, 213 (App. Div. 2007).

McCool's contention that his case is similar to <u>Richardson</u> and <u>Moran v. Board of Trustees, Police & Firemen's Retirement System</u>, 438 N.J. Super. 346 (App. Div. 2014), is not convincing. In <u>Richardson</u>, a corrections officer was injured while attempting to subdue an inmate. 192 N.J. at 193. There, the officer straddled the inmate to hold him down. <u>Ibid.</u> The inmate continued to kick,

punch, and throw his body around, and eventually pulled himself loose. Ibid. The inmate then forcefully jerked up from the ground and knocked the officer backward, injuring him. Ibid.

In Moran, the court found an undesigned and unexpected event occurred when a "combination of unusual circumstances . . . led to [the member's] injury." 438 N.J. Super. at 354. In that case, a firefighter was injured after kicking down a door to a burning building because he heard voices yelling from inside. Id. at 349-50. The firefighter was part of the "engine company" that brought hoses to burning buildings and not part of the "truck company" that brought equipment used to forcibly enter buildings. Id. at 349. The "truck company" was running late so the firefighter attempted to rescue victims trapped inside the building despite not having the proper equipment. Id. at 354. We concluded the firefighter's injury was caused by an undesigned and unexpected event because the firefighter faced unusual circumstances, including the presence of victims inside the burning building, the "truck company's" delay, and the lack of equipment to break down the door. Ibid.

Unlike in Richardson and Moran, petitioner's injury did not result from an "unexpected happening." He did not face unusual circumstances like in Moran; nor was he injured as a result of an unexpected force exerted by another

individual like in <u>Richardson</u>. After considering all of the evidence presented and the applicable legal standards, the ALJ determined McCool failed to prove by a preponderance of the evidence his disability was caused by an undesigned and unexpected event. The ALJ's decision was based on ample findings supported by substantial credible evidence in the record and was not arbitrary, capricious, or unreasonable. We discern no basis to disturb the Board's decision adopting the ALJ's findings and denying McCool's application for ADR benefits.

The Board's decision is supported by sufficient credible evidence on the record as a whole. <u>R.</u> 2:11-3(e)(1)(D). To the extent we have not otherwise addressed McCool's arguments, they are without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3332-21