741 A.2d 612 (1999)
326 N.J. Super. 395
Mona OUTLAND, Appellant,
v.
BOARD OF TRUSTEES OF the TEACHERS' PENSION AND ANNUITY FUND, Respondent.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1999.
Decided December 15, 1999.
*613 Charles Crocco, Neptune, for appellant (Nelson & Fromer, attorneys; Bruce P. Fromer, on the brief).
B. Michelle Albertson, Deputy Attorney General, for respondent (John J. Farmer, Attorney General, attorney; Joseph L. Yannotti, Assistant Attorney General, of counsel; Ms. Albertson, on the brief).
Before Judges MUIR, Jr., WALLACE, Jr. and CUFF.
The opinion of the court was delivered by *614 WALLACE, Jr., J.A.D.
Appellant Mona Outland appeals from a decision of the Board of Trustees of the Teachers' Pension and Annuity Fund (Board) denying her request to file an application for accidental disability retirement. The Board determined that appellant was not a member of the pension system because she had voluntarily withdrawn her contributions. On appeal, appellant contends she established good cause to reopen and consider her retirement selection. We agree and reverse.
The facts are relatively simple. Appellant was born on August 7, 1959. She commenced employment as a teacher of emotionally disturbed children for the Monmouth-Ocean Educational Services Commission on January 24, 1994 and was enrolled in the Teacher's Pension and Annuity Fund (TPAF) on February 1, 1994. Appellant suffered severe and disabling injuries when she was assaulted by one of her students on April 22, 1994. She applied for and received workers' compensation benefits.[1] Appellant was unable to return to work for the balance of the school year which ended June 30, 1994. On that date, appellant concluded her last day of active service in public employment. At that time, appellant was a member in good standing of the TPAF with approximately five months of credited service.
Outland certified that upon recommendation of her employer, she decided to withdraw her pension contributions in order to avoid taxes. On January 26, 1995, she completed an Application for Withdrawal of her accumulated pension funds. In completing the application, appellant marked the box to indicate she was "receiving periodic benefits under a claim filed for workers' compensation based on an injury incurred in public employment" and that she had a pending claim. Appellant also checked the box for her election to withdraw her pension contributions and waive her right to receive a monthly allowance and Group Life Insurance at retirement in favor of receiving a refund of her pension contributions. In Part 2 of the application, her employer certified that appellant's last salary deduction was made for the month of June 1994 and that she was no longer under contract, but that appellant was receiving Workers' Compensation benefits and had a pending claim.
At the bottom of the application the form provided "[p]lease read instructions on reverse side before completion." The reverse side of the application contained instructions for separate categories of Withdrawal, Deferred Retirement, Inactive Membership Transfer Privileges, Federal Income Tax Liability, Group Term Life Insurance, Workers' Compensation, Purchase of Former Membership Service, Supplemental Annuity Collective Trust, Execution of Form, and Military Service Contribution. The instructions under Workers' Compensation provided as follows:
Under the provisions of the statute, an employee who is receiving periodic Workers' Compensation benefits as the result of an injury incurred in public employment is considered an active employee and an active member of the Retirement system. Therefore, the employee can not withdraw his pension contributions while he is receiving Workers' Compensation benefits or has a claim pending, or litigation pending regarding Workers' Compensation. His employer is obligated by statute to pay the member's full percent of pension contributions based on the salary the member was receiving immediately prior to the receipt of Workers' Compensation benefits.
On February 27, 1995, appellant received a check for $405.19 representing *615 her total pension contributions absent the applicable taxes.
Over two years later, in May 1997, appellant submitted her application for accidental disability retirement with the Division of Pensions and Benefits (Division) which was processed in a regular fashion. She indicated that she was totally and permanently disabled from her injuries of April 23, 1994. On June 11, 1997, the Division notified petitioner that her request to file for accidental disability retirement was denied since she withdrew her pension contributions.
Appellant appealed the TPAF Board's denial in writing on July 25, 1997. She claimed that she was not advised orally or in writing that she would be waiving her right to proceed with an accidental disability pension application if she withdrew her contribution from the pension plan. At its meeting on September 11, 1997, the TPAF Board denied appellant's application for an accidental disability retirement allowance on the grounds that she elected to waive her rights to a retirement benefit, therefore, relinquishing all her rights and privileges associated with the retirement system. The Board also approved appellant's request for a hearing and by letter dated September 12, 1997, the contested matter was referred to the Office of Administrative Law.
The Administrative Law Judge (ALJ) concluded that the Division was not required to provide specific information concerning possible adverse consequences to an individual withdrawing her contributions. The ALJ further reasoned that a reasonable person would understand that withdrawal terminates membership and the benefits associated with membership. The TPAF Board accepted the ALJ's recommendations and affirmed its prior decision. This appeal followed.
Before addressing appellant's arguments, we note that our review is limited. Brady v. Board of Rev., 152 N.J. 197, 210, 704 A.2d 547 (1997). We will only reverse a decision of an administrative agency if it is arbitrary, capricious, or unreasonable. Ibid. We must defer to an agency's expertise and superior knowledge of a particular field. Greenwood v. State Police Training Ctr., 127 N.J. 500, 513, 606 A.2d 336 (1992). We may not substitute our judgment for that of the agency even though we might well have reached a different conclusion. State v. Locurto, 157 N.J. 463, 471, 724 A.2d 234 (1999); Greenwood, supra, 127 N.J. at 513, 606 A.2d 336. If the original findings are supported by substantial credible evidence in the record as a whole, we must accept them. Brady, supra, 152 N.J. at 210, 704 A.2d 547. The interest of justice, however, authorizes a reviewing court to abandon its traditional deference to agency decisions when an agency's decision is manifestly mistaken. P.F. v. New Jersey Div. of Developmental Disabilities, 139 N.J. 522, 530, 656 A.2d 1 (1995).
Although our review is limited, it is not "simply a pro forma exercise in which [the court] rubber stamp[s] findings that are not reasonably supported by the evidence." Chou v. Rutgers, 283 N.J.Super. 524, 539, 662 A.2d 986 (App.Div.1995), certif. denied, 145 N.J. 374, 678 A.2d 714 (1996). Moreover, we are not bound by an agency's interpretation of a statute, if it is contrary to legislative intent and plain meaning of the statute. Fiola v. State, 193 N.J.Super. 340, 347, 474 A.2d 23 (App.Div. 1984).
Plaintiff contends she presented good cause sufficient to permit the TPAF Board to reopen her retirement selection. In considering plaintiff's appeal we start from the "well-settled proposition that since pension laws are remedial social legislation, they must be liberally construed in favor of the persons intended to be benefitted thereby." Bumbaco v. Board of Trustees of PFRS, 325 N.J.Super. 90, 94, 737 A.2d 1147 (App.Div. 1999) (citing Steinmann v. State, 116 N.J. 564, 572, 562 A.2d 791 (1989) (holding that it is important to construe the statutes and regulations relating *616 to pensions with due regard to the significant interest of public employees)).
It is clear that the Board may reconsider and open a pensioner's request to review her retirement selection upon a showing of good cause. Steinmann v. State, supra, 116 N.J. 564, 573, 562 A.2d 791 (1989). Several cases are helpful to our review in determining whether appellant has shown good cause.
In Duvin v. State, 76 N.J. 203, 386 A.2d 842 (1978), a public employee sought early retirement pursuant to N.J.S.A. 43:15A-41 and was retired effective January 1, 1976. Six months later on July 16, 1976, he filed an application seeking accidental disability retirement pursuant to N.J.S.A. 43:15A-43 in lieu of the early retirement allowance he was receiving. Duvin, supra, 76 N.J. at 205, 386 A.2d 842. The agency denied his request because he was no longer a member of the Public Employees' Retirement System (PERS). Ibid. On appeal, we reversed concluding that the employees' membership in PERS continued for two years after he discontinued services. Id. at 206, 386 A.2d 842. The Supreme Court reversed concluding that the legislative plan of the pension statute established that membership in PERS terminates upon retirement. Id. at 207-08, 386 A.2d 842. However, the Court remanded to the agency to determine whether good cause was shown by the employee for reopening his original pension application and allowing him to claim accidental disability retirement in lieu of early retirement allowance. Id. at 208, 386 A.2d 842.
In Geller v. Department of the Treasury, 53 N.J. 591, 252 A.2d 393 (1969), a teacher took maternity leave for two years and four months. The teacher's pension statute provided for membership in the retirement system to cease after two years absence without pay. Geller, supra, 53 N.J. at 593, 252 A.2d 393. The teacher sought to receive full pension credit for her prior teaching service and authorized the Board to make increased deductions from her pay. Ibid. The Board failed to comply. Ibid. Eighteen years later, the teacher sought information about early retirement and was informed that she had not purchased 6.4 years of prior service. Id. at 596, 252 A.2d 393. The Supreme Court noted that a primary objective in establishing pensions for public employees "is to induce able persons to enter and remain in public employment, and to render faithful and efficient service while so employed." Id. at 597-98, 252 A.2d 393. The Court further noted that statutes "creating pensions should be liberally construed and administered in favor of the persons intended to be benefitted thereby." Ibid. The Court held that "[i]n light of the Board's expertise in such matters and [the teacher's] inexperience, if the Board was not clear as to her authorization, it should have said so and sought clarification." Id. at 600, 252 A.2d 393. The Court ordered that the teacher be restored to the pension position she would have achieved had the deductions been made as authorized. Ibid.
In Smith v. Consolidated Police & Firemen's Pension Fund Comm'n, 149 N.J.Super. 229, 373 A.2d 685 (App.Div.), certif. denied, 75 N.J. 8, 379 A.2d 239 (1977), a fireman had retired after thirty-two years of service, effective February 1, 1974. Over one year later, on July 29, 1975, the fireman applied for accidental disability retirement due to a job related accident which occurred on July 11, 1973. Smith, supra, 149 N.J.Super. at 231, 373 A.2d 685. The Board of the Consolidated Police and Firemen's Pension Fund Commission (PFRS) denied the request because there was no legal provision for reclassification of a pension after retirement and the Commissioner affirmed. Id. at 232, 373 A.2d 685. In rejecting the Board's position that the five-year period for submitting a disability application only pertained to active members of PFRS, we placed great emphasis on "the fact that [the fireman's] claim [was] based on an incident alleged to have occurred while a member before retirement." Id. at 234, 373 A.2d 685. We held that since the fireman's claim was *617 made within the five-year period provided by N.J.S.A. 43:16-2, and the injury occurred while he was a member before retirement, the Board should process the application for disability in the same manner as an application of an active member. Id. at 234-35, 373 A.2d 685.
In Fiola v. State, 193 N.J.Super. 340, 474 A.2d 23 (App.Div.1984), we addressed a situation where a retired fireman filed for deferred retirement benefits after the deadline. Fiola retired effective July 1974. Fiola, supra, 193 N.J.Super. at 343, 474 A.2d 23. In March 1976, PFRS sent Fiola a document entitled "Member's Expiration Notice" advising that his retirement account would expire on July 1, 1976. Id. at 344, 474 A.2d 23. The notice also informed Fiola if he did not plan to return to service before July 1, 1976, he could withdraw his contributions. Ibid. The withdrawal application further advised that "[i]f you can qualify for a retirement benefit, notify us immediately that you wish to apply for a specific retirement benefit, since your failure to notify our office will jeopardize your eligibility for benefits." Ibid. No application for a deferred retirement was included, nor was Fiola advised that failure to apply for early retirement within two years would constitute an absolute bar to receipt of benefits. Id. at 344-45, 474 A.2d 23.
In January 1982, Fiola requested an application for deferred retirement allowance. Id. at 345, 474 A.2d 23. PFRS referred the matter to an ALJ who decided in Fiola's favor. Ibid. However, PFRS disagreed and Fiola appealed. Ibid. We concluded that the PFRS notice did not constitute fair dealing with Fiola because the documents were ambiguous, designed to encourage withdrawal, and failed to assist the member in preserving his deferred retirement rights if that is what he wished to do. Id. at 351, 474 A.2d 23. We reversed and remanded to PFRS to accept Fiola's application for a deferred retirement allowance. Ibid.
In Steinmann v. State, supra, appellant was a teacher entitled to an early retirement pension based on more than twenty-five years of service. 116 N.J. at 565, 562 A.2d 791. She was also eligible to apply for disability retirement benefits because she had sustained a job related injury in 1981. Ibid. She was not adequately informed by the Board that her disability pension benefit, reduced by her ultimate workers' compensation award, could be less than her early retirement benefit. Ibid. When the appellant eventually learned that her net disability pension would be much less than her service pension, the appellant requested permission to change her pension selection. Ibid. The Board denied appellant's request because "once a retirement has become effective no change is possible." Ibid. An ALJ ruled appellant had shown the requisite good cause and reasonable diligence to reopen her pension designation. Ibid. However, the Board rejected this conclusion and the effect of a worker's compensation award on her retirement plan. Ibid. We affirmed. Id. at 566, 562 A.2d 791.
The Supreme Court reversed, explaining that the Board too narrowly interpreted the good cause standard in the "context of the Legislature's intention to provide public retirees with a variety of options in selecting a retirement benefit plan." Id. at 574, 562 A.2d 791. The Court explained that a review of the statutory benefit plans reflects a clear intent to afford public employees a wide array of retirement options consistent with their personal circumstances. Id. at 575, 562 A.2d 791. The Court stated that "the parameters of the `good cause' standard should be sufficiently flexible to accommodate the legislative purpose of affording public employees the right to make informed choices among the statutorily authorized retirement options." Id. at 576-77, 562 A.2d 791. The Court found that Steinmann demonstrated good cause to permit her to change her pension designation, without regard to her knowledge of the workers' compensation offset. Id. at 576, 562 A.2d 791. The Court remanded *618 for the Board to "seriously evaluate whether, consistent with its overall responsibility for administration of the teachers' pension and annuity fund, N.J.S.A. 18A:66-56, a modification of its rules that would defer in such cases final election of a retirement option until after the compensation award has been made would be feasible and appropriate." Id. at 577, 562 A.2d 791.
Relying on the analysis and explanations in the foregoing cases, and in view of the remedial nature of pension legislation, we are satisfied the Board did not adequately consider appellant's circumstances before denying her application. In particular, appellant was not informed of the consequences of receiving workers' compensation benefits. It was stipulated that appellant was advised by her employer to withdraw her pension contributions in order to avoid adverse tax consequences. Plaintiff filed her withdrawal application and indicated she was receiving periodic benefits from a claim filed for workers' compensation based on an injury that occurred on her job on April 22, 1994. Her employer concurred that she was receiving workers' compensation benefits. The instructions on the application explained the consequences of withdrawing pension contributions as it related to deferred retirement, inactive membership, transfer privileges, federal income tax liability, group life insurance, workers' compensation, purchase of former membership service, and supplemental annuity collective trusts. However, the application did not contain information indicating a possible waiver against filing an application for an accidental disability pension at a later date.
More importantly, the application specifically provided that "an employee who is receiving periodic [w]orkers' [c]ompensation benefits as the result of injury incurred in public employment is considered an active employee and an active member of the retirement system." N.J.S.A. 18A:66-39 provides that a member under sixty-five years of age is entitled to receive accidental disability retirement "if said member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties". N.J.S.A. 18A:66-39(c). The application to obtain such a retirement "must be filed within five years of the original traumatic event." Ibid.
Appellant was injured on the job on August 22, 1994 and filed her application for disability retirement in May of 1997, well within the five-year period. Nevertheless, the Board urges that appellant was not a member since under N.J.S.A. 18A:66-7(b) membership ceases "upon the withdrawal by a member of his accumulated deductions as provided in this article," and appellant withdrew as a member in 1995. This approach ignores the obvious instructions on the application that an employee receiving workers' compensation "is considered an active employee and an active member of the retirement system." Moreover, the instruction is consistent with N.J.S.A. 18A:66-32, which expressly provides that "if a member of the retirement system receives periodic benefits payable under the workmen's compensation law during the course of his active service, in lieu of his normal compensation, his regular salary deductions shall be paid to the retirement system by his employer." (Emphasis added.) Thus, appellant was entitled to continue her active service with her employer paying her regular pension deduction into the retirement system.
In our view, once appellant informed the Board she was receiving workers' compensation benefits, the Board should have informed her that her employer was required to continue paying retirement benefits into the fund and that those payments would continue until the workers' compensation benefits ceased or when the member retired. In any event, on this record we are unable to determine the reason the Board concluded appellant was able to withdraw as an active member in *619 the face of the instruction that a person receiving worker compensation benefits would continue as an active member. It is clear that appellant was not presented with information concerning the consequences of receiving workers' compensation benefits at the same time she attempted to withdraw her funds. Without that information, appellant could not make an informed choice. The application was at best, ambiguous. Consistent with the view expressed in Steinmann, the good cause standard should be "sufficiently flexible to accommodate the legislative purpose of affording public employees the right to make informed choices among the statutorily authorized retirement options". Steinmann, supra, 116 N.J. at 576, 562 A.2d 791. We conclude that appellant demonstrated good cause for the Board to consider her application for disability benefits.
We reverse and remand to the Board to accept appellant's application for a disability pension and to proceed on its merits.
NOTES
[1] The stipulated facts did not include this fact, but appellant indicated on her application that she was receiving workers' compensation benefits. In addition her claim for benefits during the summer was ultimately decided by the Supreme Court in Outland v. Monmouth-Ocean Ed. Serv., 154 N.J. 531, 713 A.2d 460 (1998).