891 A.2d 1257

IN THE MATTER OF KENNETH VAN ORDEN, JR.

Superior Court of New Jersey
Appellate Division

Submitted September 14, 2005—Decided March 2, 2006.

Before Judges STERN, FALL and LEVY.

*Roger J. Skoog,* attorney for appellant Kenneth Van Orden, Jr.

*Peter C. Harvey,* Attorney General, attorney for respondent Department of the Treasury (*Patrick DeAlmeida,* Assistant Attorney General, of counsel; *Marc Krefetz,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

LEVY, P.J.Ch. (temporarily assigned).

Kenneth Van Orden, Jr. appeals from a final administrative decision of the Board of Trustees of the Public Employees' Retirement System (PERS) issued on August 19, 2004 denying his application to change his pension payment option after the thirty-day time period for making changes expired and after appellant began receiving his retirement allowance. PERS concluded that applicable statutes and regulations prevented it from granting the request. The facts are undisputed.

Appellant began public employment on April 1, 1976 and became a permanent employee of the Roxbury Township Board of Education on July 1, 1976. He enrolled in PERS as of November 1, 1976. On April 10, 2003, he filed an application with the Division of Pensions and Benefits (Division) seeking a retirement allowance based on his anticipated retirement from service as a veteran as of July 1, 2003.

At the time he filed for retirement, appellant was engaged in matrimonial litigation with his wife, Carol Van Orden, in the Family Part. In his retirement application, appellant selected a payment option that would provide him with maximum benefits during his life, but no payments to his wife in the event of his

death. As set forth on the retirement application, the option stated:

MAXIMUM OPTION—NO PENSION BENEFIT TO BENEFICIARY—Largest allowance paid to you with no pension benefit paid to a beneficiary upon your death.

As required by *N.J.S.A.* 43:15A-50a, on April 14, 2003, the Division notified appellant's wife of her husband's selection and the fact that, because of that selection, she would not receive any pension payments in the event of his death. In pertinent part, the Division's letter stated:

This is to notify you that your spouse has selected the maximum retirement allowance. Under this choice, the monthly retirement allowance is payable for the lifetime of the member only. Therefore, you will not receive any pension payments in the event of the death of your spouse. However, if your spouse dies before receiving the total amount of the member's pension contributions plus interest, the remaining balance will be paid to the designated beneficiary or estate.[1]

Appellant's wife moved before the Family Part for *pendente lite* relief, arguing that appellant "unilaterally changed his pension designation" as evidenced by the letter from the Division of Pensions. Appellant opposed the motion and cross-moved for other relief.[2]

Prior to the Family Part's decision on the motions, PERS, at its regular meeting on June 18, 2003, approved appellant's application for a veteran's retirement effective July 1, 2003, including the maximum retirement option with no survivor benefits.

By order dated June 20, 2003 [3], the Family Part judge required appellant to designate his wife "as beneficiary of his retirement

---

[1] Appellant had named his daughter, Crystal Piela, as his beneficiary, entitling her to group life insurance proceeds and any remaining pension balance in the event he died before receiving pension amounts equal to his pension contributions.

[2] While the State argues that appellant "acquiesced" to the relief sought because he waived oral argument notwithstanding the court's Tentative Decision, it is clear from the court's order confirming that decision that appellant opposed the motion.

[3] The order was filed on June 24, 2003.

plan, within three days, and [to] provide proof of such coverage to [her] as soon as possible." The court's reasons were explained in the Tentative Decision issued the day before:

> Because any retirement interest acquired during the marriage is subject to equitable distribution and therefore the wife may have an interest in same, the court shall order that the husband designate the wife as beneficiary of his retirement plan, within three days, and he shall provide proof of such coverage to the wife as soon as possible.

Before appellant filed to change his retirement benefit option as required by the court, PERS, by letter dated July 18, 2003, notified him that his original application had been approved. That notification, in pertinent part, stated:

> In accordance with law, you have until thirty days after (A) the effective date of your retirement, or (B) the date your retirement was approved by the Board of Trustees, whichever is the later date, to make any changes to your retirement. Also, your first check cannot be mailed until after this thirty day period. However, the benefit will be retroactive to the original effective date of your retirement.

On August 1, 2003, as required by the court order, appellant filed an amended "Application For Retirement Benefit," changing his beneficiary to his wife, and modifying his retirement payment option to:

> OPTION D—25% TO BENEFICIARY—INCREASE TO MAXIMUM OPTION— Upon your death, your beneficiary receives a lifetime monthly retirement allowance equal to 25% of your monthly allowance.

The Board of Trustees of PERS approved that change at its August 20, 2003 meeting.

A final judgment of divorce was issued on February 3, 2004. In it, Carol Van Orden relinquished all of her interest in appellant's pension. Therefore, on February 10, 2004, appellant sought to revive his original pension benefit selection that would have provided him with the maximum benefit with no death benefit being provided to his beneficiary.[4]

---

[4] Specifically, on February 10, 2004, Van Orden requested "a written consent form for the purpose of relinquishment of rights to my pension by my Ex wife Carol Van Orden." On February 18, 2004, PERS responded to this request in a letter which stated "Please be advised that we do not have a standard waiver document for use in such situations. However, since the provisions within the

However, on April 15, 2004, the Chief of the Division of Pensions and Benefits, Bureau of Retirements, wrote to appellant rejecting the application as being out of time, citing *N.J.A.C.* 17:2–6.3 and stating:

> You had 30 days from the date of your retirement or date the PERS Board of Trustees approved your retirement, whichever is later, to make any changes to your retirement. Since the Board of Trustees approval date was later than your retirement date, you had until 30 days after the Board approval date of August 20, 2003 to make your request to change your option. While I sympathize with your situation, I cannot grant your request.
>
> By copy of this letter, I am forwarding your appeal request to Kathleen Coates, Secretary to the PERS Board of Trustees for presentation to the Board for a final determination. Ms. Coates will notify you of the date the Board will review your case.

The PERS Board of Trustees reviewed appellant's request at its meeting of May 19, 2004. In a letter to appellant dated May 20, 2004, the Board denied his application. It stated, in pertinent part:

> [S]ince the Board approval date of August 20, 2003 was later than your retirement date, you had until September 20, 2003 to request a change in your option selection. Therefore, since you did not request to change your option within the requisite time period, the Board has no authority to grant your request.[5]

The letter also advised appellant that he could appeal the Board's decision within 45 days and that, upon the filing of such appeal, the Board would determine whether to retain the matter for final

---

attached court order clearly indicate Ms. Van Orden is waiving any and all rights that she may have had to any portion of your pension account. It may be necessary for her to complete a formal waiver statement." (These letters were not contained in the appendix. We obtained copies from the Attorney General.)

[5] PERS argues that, in addition to the prohibition against changing retirement OPTION D, appellant was prohibited from changing his beneficiary by *N.J.A.C.* 17:2–6.1(a) (the designation of that section was changed to 6.1(c) by amendments to the Code in 2005). However, his February 10, 2004 letter requesting to change his retirement choice to OPTION D does not include a request to change his beneficiary. Furthermore, the question presented by this appeal is whether PERS had the authority to approve appellant's request to revive his original choice of payment options. If PERS has that authority and were to approve the MAXIMUM option, a change in beneficiary would be clearly permitted. *N.J.A.C.* 17:2–6.1(c); *N.J.S.A.* 43:15A–57.1.

determination without a further proceeding or to grant an administrative hearing. That determination would depend upon whether the appeal required the resolution of factual issues or solely the determination of questions of law.

Thereafter, appellant filed an appeal with the Board, objecting to its May 20, 2004 ruling and sought a hearing. On August 19, 2004, the Board forwarded a Final Administrative Determination to appellant's attorney, in which it denied both appellant's request for a hearing and his request to change his retirement option selection. The Board concluded "the statutes and regulations governing PERS do not permit the PERS Board to grant your request to change [appellant's] retirement option."

The Board cited the following portion of *N.J.S.A.* 43:15A–50:

At the time of retirement, a member shall receive benefits in a retirement allowance payable throughout life, or the member may, on retirement, elect to receive the actuarial equivalent of the member's retirement allowance, in a lesser retirement allowance payable throughout life. . . .

The Board also cited *N.J.A.C.* 17:2–6.3:

(a) A member shall have the right to withdraw, cancel or change an application for retirement at any time before the member's retirement allowance becomes due and payable by sending a written request signed by the member. Thereafter the retirement shall stand as approved by the Board.

(b) Except in the event of deferred retirement, if a member requests a change of retirement date or option selection before the member's retirement allowance becomes due and payable, said change will require approval of the Board and the revised retirement allowance shall not become due and payable until 30 days have elapsed following the effective date or the date the Board met and approved the change in the member's retirement application, whichever is later.

The Board then noted that, because it had approved appellant's amended retirement application on August 20, 2003, his right to change his retirement option selection expired on September 20, 2003. Therefore, the Board concluded appellant's February 10, 2004 request to reinstate his first selection was out of time. This appeal followed.

We recognize the standard for review of an administrative agency decision is limited.

We will only reverse a decision of an administrative agency if it is arbitrary, capricious, or unreasonable. [*Brady v. Bd. of Rev.*, 152 *N.J.* 197, 210, 704 *A.2d* 547

(1997).] We must defer to an agency's expertise and superior knowledge of a particular field. *Greenwood v. State Police Training Ctr.*, 127 *N.J.* 500, 513, 606 *A.*2d 336 (1992). We may not substitute our judgment for that of the agency even though we might well have reached a different conclusion. *State v. Locurto*, 157 *N.J.* 463, 471, 724 *A.*2d 234 (1999); *Greenwood, supra*, 127 *N.J.* at 513, 606 *A.*2d 336. If the original findings are supported by substantial credible evidence in the record as a whole, we must accept them. *Brady*, 152 *N.J.* at 210, 704 *A.*2d 547. [*Outland v. Bd. of Trustees of the Teachers' Pension & Annuity Fund*, 326 *N.J.Super.* 395, 399–400, 741 *A.*2d 612 (App.Div.1999).]

On the other hand, we "need not defer to an agency's determination of a question of law not inextricably related to the agency's expertise." *Steinmann v. State, Department of Treasury*, 116 *N.J.* 564, 576, 562 *A.*2d 791 (1989)(citing *Mayflower Sec. Co. v. Bureau of Sec.*, 64 *N.J.* 85, 93, 312 *A.*2d 497 (1973)). Moreover, "[w]hen an agency's decision is manifestly mistaken ... the interests of justice authorize a reviewing court to shed its traditional deference to agency decisions." *P.F. v. New Jersey Div. of Developmental Disabilities*, 139 *N.J.* 522, 530, 656 *A.*2d 1 (1995).

In this case, we conclude that the PERS Board was mistaken when it concluded that it was powerless to change appellant's retirement payment option. Without question, the Board's decision to deny appellant's application was based solely upon the Board's understanding that it was prohibited by law from even considering the application because it was filed out of time. Indeed, the Board's brief argues that the Board "had no choice but to deny [appellant's] request." As stated by the chief of the Bureau of Retirements in the Division of Pensions and Benefits in his April 15, 2004 letter to appellant denying appellant's application because it was filed late, "While I sympathize with your situation, I cannot grant your request." The Board's perceived inability to consider appellant's unique circumstances to determine whether there was good cause to reopen or modify appellant's pension option was reiterated in its May 20, 2004 letter to appellant advising him of its initial decision: "[S]ince you did not request to change your option within the requisite time period, the Board has no authority to grant your request." Ultimately, in its

Final Administrative Determination, the Board again concluded "the statutes and regulations governing PERS do not permit the PERS Board to grant your request to change [your] option."

Thus, the Board never considered the equities presented by appellant's unique circumstances. Instead, the Board concluded that, regardless of the equities, it was prohibited by law from granting appellant's request. We hold that, in reaching that conclusion, the Board erred as a matter of law.

Although appellant may have been prohibited by Board regulations from prosecuting an application to change his payment option,[6] the Board had the inherent power upon a showing of good cause to reopen its proceeding to approve the change. *Steinmann, supra,* 116 *N.J.* at 573, 562 *A.*2d 791; *Duvin v. State,* 76 *N.J.* 203, 207, 386 *A.*2d 842 (1978); *Skulski v. Nolan,* 68 *N.J.* 179, 195–96, 343 *A.*2d 721 (1975); *Ruvoldt v. Nolan,* 63 *N.J.* 171, 183–84, 305 *A.*2d 434 (1973).

The power to reopen proceedings "may be invoked by administrative agencies to serve the ends of essential justice and the policy of the law." *Handlon v. Belleville,* 4 *N.J.* 99, 107, 71 *A.*2d 624 (1950). "In the absence of some legislative restriction, administrative agencies have the inherent power to reopen or to modify and to rehear orders that have been entered." *Burlington County Evergreen Park Mental Hosp. v. Cooper,* 56 *N.J.* 579, 600, 267 *A.*2d 533 (1970).

---

[6] A prior PERS decision provides some authority for the proposition that an application for a change in a retirement allowance selection after the retirement allowance becomes due and payable could be approved based upon "compelling equitable considerations." *Schaeffer v. Public Employees' Retirement System,* 8 *N.J.A.R.* 427. Although a change was not approved in that case, PERS adopted the findings of fact and conclusions of law of the administrative law judge, including a conclusion of law that PERS could not deviate from its regulations prohibiting approval of retirement application changes after the retirement allowance becomes due and payable "unless there is a showing of incompetency, mutual mistake, fraud, or other compelling equitable considerations." *Id.* at 439.

In *Duvin, supra,* PERS refused to consider an application to change a pension from an early retirement allowance to an accidental disability retirement because the applicant had been retired and receiving early retirement benefits for more than six months and, therefore, was no longer a member of PERS. In denying the application, PERS reasoned that, to be eligible to file for a retirement benefit, one had to be an active member of PERS. 76 *N.J.* at 205–06, 386 *A.*2d 842. Although the Court agreed with PERS that the applicant had ceased to be a member of PERS upon his retirement, it disagreed that PERS was without power to consider his request for a change in retirement benefits. After noting that the PERS decision was based upon the applicant's ineligibility to "file for a retirement benefit," the Court distinguished the applicant's request, noting the "application, in essence, sought to reopen the previous application for early retirement. . . ." *Id.* at 207, 386 *A.*2d 842. The Court noted that "[i]n *Skulski v. Nolan,* 68 *N.J.* 179, 343 *A.*2d 721 (1975) and in *Ruvoldt v. Nolan,* 63 *N.J.* 171, 305 *A.*2d 434 (1973) [it] upheld the power of a pension board to reopen pension proceedings after a pension has been granted." *Duvin, supra,* 76 *N.J.* at 207, 386 *A.*2d 842. The Court further noted that in its refusal to consider the application, "[t]he Board gave no consideration to the question of whether it could or should, for good cause shown, reopen its previous grant of early retirement allowance to respondent and permit him to file for accidental disability retirement." *Id.* at 206, 386 *A.*2d 842. Thus, the Court held that, notwithstanding a requirement that would prevent an applicant from filing for a change in a pension benefit, for good cause shown, the Board had the inherent power to reopen its own proceeding to consider the requested relief. *Id.* at 208, 386 *A.*2d 842. This case calls for the same result.

Pension legislation is remedial in nature and should be liberally viewed in favor of the employee. *Smith v. Consol. Police & Firemen's Pension Fund Comm'n,* 149 *N.J.Super.* 229, 232, 373 *A.*2d 685 (App.Div.1977). Although an employee's rights are to be construed within the framework of the statutory language, *Grieco*

*v. Employees' Ret. Sys. of Newark,* 173 *N.J.Super.* 474, 478, 414 *A.*2d 597 (App.Div.1980), the court should keep in mind that pension statutes are designed to benefit the public employee, the "primary objective in establishing pensions for public employees '[being] to induce able persons to enter and remain in public employment, and to render faithful and efficient services while so employed.'" *Outland, supra,* 326 *N.J.Super.* at 401, 741 *A.*2d 612 (quoting *Geller v. Dep't of the Treasury,* 53 *N.J.* 591, 597–98, 252 *A.*2d 393 (1969)).

 The statute establishing the Public Employees' Retirement System of New Jersey, *N.J.S.A.* 43:15A–1 *et seq.,* contains no prohibition against the reopening of proceedings by PERS. Likewise, the applicable administrative regulations, *N.J.A.C.* 17:2–6.3(a), *N.J.A.C.* 17:2–6.2 and *N.J.A.C.* 17:2–6.1(a), contain no such prohibition. Therefore, PERS was free to reopen its August 20, 2003 decision that approved appellant's amended application resulting in a reduced retirement allowance for appellant and a death benefit for his wife. The question was whether there was good cause to do so. *Duvin, supra,* 76 *N.J.* at 207, 386 *A.*2d 842. Good cause may be established by showing that reopening proceedings would "serve the ends of essential justice and the policy of the law," *Handlon, supra,* 4 *N.J.* at 107, 71 *A.*2d 624.

 The facts in this case, in light of the policies underlying State pension legislation, present a compelling argument for reopening the proceedings. Appellant, no doubt motivated by his pending divorce action, initially selected a retirement allowance option that provided the maximum benefit for him and no death benefit for his wife. He was then ordered by the Family Part, *pendente lite,* to change his selection to provide a death benefit for his wife and to designate her as beneficiary under his retirement plan. According to the court's Tentative Decision, the change to the plan was ordered because appellant's wife "may have an interest in same." Appellant dutifully followed the court's command and made the change, protecting his wife's potential interest. However, when his wife later relinquished any interest she

may have had in his pension, appellant was unable to undo the court-mandated selection and reinstate his original personal choice. Thus, the legislative purpose to enable public employees to make fully informed decisions and select pension options that best meet their individual needs was thwarted. *See Steinmann, supra,* 116 *N.J.* at 575, 562 *A.*2d 791. Moreover, the process resulted in an inequitable outcome for appellant. For these reasons, we reverse and remand to PERS for further consideration.[7]

Reversed and remanded.

---

[7] We are mindful of the need to preserve the actuarial integrity of the pension system and that such need underlies the prohibition against changing payment options after an allowance becomes due and payable. However, we consider the circumstances of this case to be unique and, therefore, unlikely to frequently reoccur. Thus, our decision here is not likely to adversely affect the integrity of the system.