Judge CUFF
(temporarily assigned), dissenting.
This appeal presents the narrow issue of whether the disabled son of a retired member of the Police and Firemen’s Retirement System (PFRS) may have his survivors’ benefits paid into a first-party special needs trust (SNT) created for him pursuant to federal law. The majority holds that he may, reasoning that the PFRS Board of Trustees (Board) and the Appellate Division adopted a rigid interpretation of the PFRS survivors’ benefits statute that undermines the statutory purpose of a survivors’ benefit to a disabled child. Ante at 371-72, 98 A3d at 1159. In doing so, the majority reverses the administrative action taken by the Board, as well as the decision of the Appellate Division, which concluded that the Board’s determination was not arbitrary, unreasonable, or capricious. Id. at 371-72, 375, 98 A.3d at 1159-60, 1161-62.
This appeal presents a straight-forward question of statutory interpretation. This appeal is not about the good faith of Thomas Saccone, the retired PFRS member. This appeal is not about the wisdom and benefits of an SNT for a disabled, dependent child. Indeed, we have acknowledged the importance of such trusts in any plan for the financial security of a disabled, dependent child and have endeavored to set forth an analytical framework to further such planning when the parents of a disabled, dependent child have divorced. J.B. v. W.B., 215 N.J. 305, 324, 73 A.3d 405 (2013).
While I agree with the majority’s conclusion that the Board’s application of N.J.S.A. 43:16A-12.1(a) led to an unfortunate result in this case, the plain language of the statute prohibits a PFRS member from designating the beneficiary of his or her survivors’ benefits. The public policy favoring the establishment of SNTs should not supersede the plain language of the statutory provi *390 sions which prohibit a retiree from designating a beneficiary other than his spouse or child. Further, the various amendments made to the statute in 1967 evince an unequivocal legislative intent to exclusively limit the survivors’ benefit. Therefore, I respectfully dissent and would affirm the Appellate Division judgment. Any changes to the statute which would allow a retiree to designate an SNT as a beneficiary are best left to the Legislature.
I.
The question before this Court is one of statutory interpretation. The goal of statutory interpretation is to “discern and effectuate the Legislature’s intent.” Patel v. N.J. Motor Vehicle Comm’n, 200 N.J. 413, 418, 982 A.2d 445 (2009) (quoting State v. Brannon, 178 N.J. 500, 505, 842 A.2d 148 (2004)). “The plain language of the statute is [the Court’s] starting point.” Ibid. The Court applies “the generally accepted meaning of the words used by the Legislature and strive[s] ‘to give effect to every word.’ ” Ibid, (citations omitted). However, words and phrases should not be read in isolation; rather, they should be read in proper context, in relation to one another, to give meaning to the whole of the statute. See Burnett v. Cnty. of Bergen, 198 N.J. 408, 424-25, 968 A.2d 1151 (2009).
If the plain language of the statute is unambiguous, the meaning is clear and the interpretive process is complete. Patel, supra, 200 N.J. at 419, 982 A.2d 445; State v. Gelman, 195 N.J. 475, 482, 950 A.2d 879 (2008) (citing DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005)). In interpreting a statute, we presume that the Legislature acted to create a logical scheme and should not look to impute avoidable contradictions. State v. Hudson, 209 N.J. 513, 542, 39 A.3d 150 (2012) (citing State v. Haliski, 140 N.J. 1, 9, 656 A.2d 1246 (1995)). That is, we should not give a strained interpretation so that one statutory clause is hopelessly at odds with another. Id. at 541-42, 39 A.3d 150. “[I]f the statutory language is susceptible to ‘more than one plausible interpretation,’” then we can “turn to such extrinsic aids as legislative *391 history for help in deciphering what the Legislature intended.” Gelman, supra, 195 N.J. at 482, 950 A.2d 879 (quoting DiProspero, supra, 183 N.J. at 492-93, 874 A.2d 1039). If the statute is ambiguous or silent on a particular point, a court should not substitute its judgment for that of the agency, provided the agency’s determination is “ ‘based on a permissible construction of the statute.’ ” Kasper v. Bd. of Trs. of Teachers’ Pension & Annuity Fund, 164 N.J. 564, 581, 754 A.2d 525 (2000) (quoting 2 Am.Jur.2d Admin. Law § 525 (1994)).
II.
The police and fireman retirement program, N.J.S.A. 43:16A-1 to -68, was established to create “a statewide pension system for full-time policemen and firemen designed to ensure the uniform protection of all such public officers through the medium of pensions payable from a fund maintained upon a sound actuarial basis.” Ante at 378-79, 98 A3d at 1163; accord N.J.S.A. 43:16A-2. PFRS is defined as “a pooled annuity defined benefit fund” in which “[o]nly a member’s contributions are attributable to the member” and “[a]ll of the remaining assets are ‘pooled’ for the entire system.” LaSala v. LaSala, 335 N.J.Super. 1, 7, 760 A.2d 1122 (App.Div.2000), certif. denied, 167 N.J. 630, 772 A.2d 932 (2001).
There is no ambiguity in the language of the statute. On the death of a member, the spouse and any qualifying child or children receive the prescribed survivors’ benefits. Although I discern no ambiguity in this language, the legislative history of survivors’ benefits for PFRS members underscores this interpretation and helps shed light on the considerations taken into account by the Legislature.
In 1920, the Legislature enacted the Pension Act of 1920, L. 1920, c. 160, which established a single uniform retirement law, covering all police and firemen. In 1944, due to the “explosive” increase in municipal deficiency appropriations, the Pension Act was amended to “reduce[] the existing liabilities through the *392 reduction of pension benefits, eliminat[e] additional liabilities through the closing of membership to the funds, and raiste] ... assets through increased contributions by members, municipalities, and State, substantially improv[ing] the financial status of the 1920 funds.” Report of the N.J. Advisory Comm’n on Local Police & Firemen’s Pension Funds 11, 13 (Feb. 1, 1952). The statewide PFRS was established, which covered all new police and fire employees.
When PFRS was first created in 1944, it allowed members a right to elect one of three optional forms of retirement and designate any beneficiary as the recipient of his retirement allowances. N.J.S.A. 43:16A-12. Pursuant to the statute, the PFRS member would receive a reduced retirement allowance in exchange for the survivors’ benefits. Ibid. Thus, the member determined how and to whom such payment would be assigned.
In 1967, the Legislature repealed N.J.S.A. 43:16A-12, thereby removing all three retirement options. L. 1967, c. 250, § 31. In lieu of the options, the Legislature created a survivors’ pension benefit, N.J.S.A 43:16A-12.1, which provides a life annuity to the member’s surviving spouse and/or child “without additional contributions by the member or reduction in the member’s retirement benefits.” LaSala, supra, 335 N.J.Super. at 8, 760 A.2d 1122. N.J.S.A. 43:16A-12.1(a) provides:
Upon the death after retirement of any member of the retirement system there shall be paid to the member’s widow or widower a pension of 50% of final compensation for the use of herself or himself, to continue during her or his widowhood, plus 15% of such compensation payable to one surviving child or an additional 25% of such compensation to two or more children; if there is no surviving widow or widower or in case the widow or widower dies or remarries, 20% of final compensation will be payable to one surviving child, 35% of such compensation to two surviving children in equal shares and if there be three or more children, 50% of such compensation would be payable to such children in equal shares.
Pursuant to the statute, a set percentage of a member’s death benefits is automatically provided to the member’s surviving spouse and/or child, without requiring additional contributions or reductions of the member’s retirement benefits. See LaSala, *393 supra, 335 N.J.Super. at 8, 760 A.2d 1122. The statute establishes greater benefits to both the member and his or her family. By opting for a mandatory benefit to the surviving spouse and/or child, the member may not nominate a beneficiary. The statute was amended again in 1971, 1985, 1991, and 1999. At none of these times was the language of the statute changed to allow for the member to change the beneficiary to any person or entity other than the surviving spouse and/or child.
III.
The majority reasons that the plain language of the statute is at odds with the legislative intent and policy purposes of the statute. Ante at 371-72, 387-88, 98 A.3d at 1159, 1168-69. It states that the Board’s “strict view” on how to interpret the word “child” would force disabled children of PFRS retirees into “an untenable situation” where the child must choose between the survivors’ benefit and public assistance programs. Id. at 371-72, 387-88, 98 A.3d at 1159, 1168-69. Further, the majority contends that “[n]o legitimate public policy is advanced by the Board’s rigid interpretation.” Id. at 371-72, 388, 98 A3d at 1159, 1169. However, one of the central tenets of statutory interpretation provides that the Court should apply the generally accepted meaning of the words used by the Legislature. Patel, supra, 200 N.J. at 418, 982 A.2d 445. To infer that the Legislature intended to include first-person SNTs in its definition of “child” requires a substantial leap which is not supported by our principles of statutory interpretation.
Additionally, words and phrases should not be read in isolation; rather, they should be read in proper context, in relation to one another, to give meaning to the whole of the statute. See Burnett, supra, 198 N.J. at 424-25, 968 A.2d 1151. In this case, the statutes which work together with N.J.S.A. 43:16A-12.1 (a) similarly prevent the member from assigning his benefits. For example, the section titled “Exemption from taxes, garnishment, etc.; as *394 signment of group insurance policy rights and benefits,” N.J.S.A. 43:16A-17, provides in relevant part:
The right of a person to a pension, an annuity, or a retirement allowance, to the return of contributions, any benefit or right accrued or accruing to a person under the provisions of this act and the moneys in the various funds created under this act ... shall be unassignable.
Likewise, the PFRS regulation titled “Beneficiary designation; pension contributions,” N.J.A.C. 17:4 — 3.5(b), prohibits a retiree from designating a primary or a contingent beneficiary as the recipient of the retiree’s pension benefits. It states: “A retiree cannot designate a primary or a contingent beneficiary for the receipt of the retiree’s accumulated pension contributions in the event of the retiree’s death.” N.J.A.C. 17:4-3.5(b).
The legislative history of the PFRS survivors’ benefit statute, specifically the repeal of N.J.S.A. 43:16A-12 and the removal of its elective language in its replacement, N.J.S.A. 43:16A-12.1(a), further evinces the Legislature’s intent to divest the retiree’s ability to designate a beneficiary and to exclusively limit the pension benefit to surviving spouses and children. The PFRS regulation, N.J.A.C. 17:4-3.5(b), and N.J.S.A. 43:16A-17 are consistent with the restrictive language of N.J.S. A. 43:16A-12.1(a).
The majority relies on the public policy of providing for the financial well-being of a member’s surviving spouse and children. Ante at 380-82, 98 A3d at 1164-66. It is true that our Court may intervene “in those rare circumstances in which an agency decision is clearly inconsistent with its statutory mission or with other State policy.” Mazza v. Bd. of Trs., Police & Firemen’s Ret. Sys., 143 N.J. 22, 25, 667 A.2d 1052 (1995). “Pension legislation is remedial in nature and should be liberally viewed in favor of the employee.” In re Van Orden, 383 N.J.Super. 410, 420-21, 891 A.2d 1257 (App.Div.2006). Thus, “courts should keep in mind that pension statutes are designed to benefit the public employee.” Id. at 421, 891 A.2d 1257.
However, the majority’s broad statement of public policy is at odds with the plain language of the statute, which implements the legislative intent to restrict the retiree’s ability to designate a *395 beneficiary. I am not unsympathetic to the member’s effort to bolster the financial security of his disabled, dependent son. In the end, however, the ability to substitute an SNT for the exclusive benefit of a member’s child is a matter for the Legislature.
IV.
I would affirm the Appellate Division. Therefore, I respectfully dissent.
For reversal and remandment — Chief Justice RABNER and Justices LaVECCHIA, FERNANDEZ-VINA, and Judge RODRÍGUEZ (temporarily assigned) — 4.
For affirmance — Justice PATTERSON, and Judge CUFF (temporarily assigned) — 2.
Not Participating — Justice ALBIN.