**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2398-20

VERONICA VARGAS,

      Petitioner-Appellant,

v.

BOARD OF TRUSTEES,
PUBLIC EMPLOYEES'
RETIREMENT SYSTEM,

      Respondent-Respondent.

_____

Argued September 12, 2022 – Decided September 21, 2022

Before Judges Mawla and Marczyk.

On appeal from the Board of Trustees of the Public Employees' Retirement System, Department of the Treasury, PERS No. xx7232.

Justin P. Kolbenschlag argued the cause for appellant (Pashman Stein Walder Hayden, PC, attorneys; Justin P. Kolbenschlag, of counsel and on the briefs; Joshua P. Law, on the briefs).

Robert E. Kelly, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Acting Attorney General, attorney; Donna Arons, Assistant

Attorney General, of counsel; Robert E. Kelly, on the brief).

PER CURIAM

Petitioner Veronica Vargas appeals from a March 18, 2021 final decision of the Board of Trustees (Board) of the Public Employees' Retirement System (PERS), which denied her request to reopen her retirement application to remove her ex-husband as her pension survivor beneficiary. We affirm.

I.

We derive the following from the summary judgment record. Petitioner worked for the State of New Jersey for over thirty-three years. She married Rick Vargas (Rick)[1] on September 10, 2011. Petitioner did not have any children with Rick, but she had one adult daughter from a prior relationship. On October 24, 2014, petitioner filed for her PERS service retirement, which would become effective on February 1, 2015. Petitioner claims she was initially inclined to select her daughter as her survivor beneficiary, but claims a human resource director told her it was in her best interest to select her spouse. Petitioner asserts she was not aware at the time she selected Rick as the beneficiary that the selection was irreversible. The Board approved petitioner's retirement

---

[1] We use Rick's first name because he shares a surname with petitioner. We intend no disrespect.

A-2398-20

application at its meeting on February 18, 2015, and named Rick as her survivor beneficiary.[2]

Petitioner filed for divorce on May 22, 2018. During the divorce proceedings, the parties attended mediation, where Rick agreed to waive any right to petitioner's pension and survivor benefits in exchange for her reciprocal waiver of any right to his 401K account. The parties ultimately settled the case

---

[2] "At the time of retirement, a member shall receive benefits in a retirement allowance payable throughout life, or the member may, on retirement, elect to receive the actuarial equivalent of the member's retirement allowance, in a lesser retirement allowance payable throughout life[.]" N.J.S.A. 43:15A-50. A PERS member may choose one of nine options to receive retirement benefits. N.J.S.A. 43:15A-50; N.J.A.C. 17:2-6.1(d). The two retirement benefit options pertinent in this matter are:

> 1. Maximum Option [which] provides the largest allowance for the member but does not include a pension benefit paid to a beneficiary upon the member's death.
>
> . . . .
>
> 9. Option D [which] provides, upon the member's death, a lifetime monthly retirement allowance equal to [twenty-five] percent of the member's monthly retirement allowance to a beneficiary. If the member's beneficiary predeceases the member, the member's retirement allowance shall increase to the Maximum Option.
>
> [N.J.A.C. 17:2-6.1(d)(1), (9).]

A-2398-20

on December 17, 2018, and entered into a marital settlement agreement (MSA), which memorialized Rick's waiver of any right to petitioner's PERS pension benefits. The final judgment of divorce was entered on December 24, 2018, which incorporated the MSA.

Petitioner originally filed an application with the Division of Pensions in May 2019 to change her pension survivor designation, and to implement the terms of the MSA and judgment of divorce. The Division of Pensions denied that application, and petitioner then appealed to the Board. On appeal to the Board, she again referenced the MSA, but also indicated Rick was abusive during the course of the marriage and had addiction issues. Petitioner further indicated she had been diagnosed with Stage 4 lung cancer. Accordingly, she submitted it would not be fair for Rick to be a beneficiary of her pension. On September 3, 2019, the Board denied petitioner's application as untimely pursuant to N.J.A.C. 17:2-6.3, and because the MSA did not clearly reflect any agreement with respect to Rick's waiver of the survivor benefit.

Petitioner resubmitted her application on October 22, 2019, along with an October 11, 2019 consent order, which specifically indicated that Rick waived and relinquished all rights to petitioner's pension survivor benefits. On July 21, 2020, the Board again denied petitioner's application, finding it was time-barred

pursuant to N.J.A.C. 17:2-6.3. Petitioner retained counsel and filed a motion for reconsideration, arguing the Board was obligated to exercise its equitable authority in light of the competent evidence and that petitioner demonstrated good cause to depart from strict adherence to the time limitations set forth in N.J.A.C. 17:2-6.3.

On March 18, 2021, the Board denied the motion for reconsideration. In addition to noting petitioner's application was untimely pursuant to N.J.A.C. 17:2-6.3, the Board determined a private agreement between two parties cannot waive the rules and regulations governing PERS. The Board further "declined to exercise its equitable authority under the facts of this case" because petitioner selected her beneficiary while she was still married and was notified several times of the limited time period in which she could amend her application. Moreover, she had collected her pension benefit for over four years before attempting to make this change.

Thereafter, petitioner filed this appeal.

## II.

Petitioner argues the following before us:

POINT I

THE PERS BOARD'S FINAL ADMINISTRATIVE DECISION WAS ARBITRARY, CAPRICIOUS, AND

UNREASONABLE BECAUSE THE BOARD FAILED TO CONSIDER THE INDIVIDUAL EQUITIES OF APPELLANT'S APPLICATION TO DETERMINE WHETHER THERE EXISTED GOOD CAUSE TO REOPEN APPELLANT'S RETIREMENT APPLICATION AND PERMIT A CHANGE TO HER BENEFICIARY DESIGNATION.

POINT II

THE PERS BOARD'S FINAL ADMINISTRATIVE DECISION MUST BE REVERSED AS A MATTER OF LAW, AS PETITIONER ACTUALLY ESTABLISHED GOOD CAUSE TO REOPEN HER RETIREMENT APPLICATION AND SHOWED THAT PERMITTING THE REQUESTED CHANGE WOULD ONLY SERVE THE ESSENTIAL ENDS OF JUSTICE AND PUBLIC POLICY.

A. Reversing the Board's Final Determination Would Serve the Policy of the Law.

B. Reversing the Board's Final Determination Would Serve the Ends of Essential Justice.

Petitioner primarily relies on In re Van Orden for the proposition that the Board has the inherent power upon a showing of good cause to reopen its proceedings to approve a change in beneficiary designation when necessary to serve the ends of essential justice and the policy of the law. 383 N.J. Super. 410, 419 (App. Div. 2006). She also relies on Minsavage ex rel. Minsavage v. Board of Trustees, Teachers' Pension Authority and Annuity Fund, 240 N.J. 103,

109 (2019), and <u>Steinmann v. State, Department of Treasury, Division of Pensions, Teachers' Pension & Annuity Fund</u>, 116 N.J. 564 (1989), in support of her arguments. In short, petitioner contends the Board was required to consider the individual equities of petitioner's application and depart from the blind application of its regulations, given the good cause the petitioner demonstrated. Petitioner further indicates it would be unjust to allow Rick to retain a portion of her pension benefits after his clear waiver.

The Board counters that it properly denied petitioner's request to change her freely chosen, irrevocable retirement option given she filed her application more than four years after her retirement became due and payable. The Board notes the Division of Pensions and Benefits provided petitioner with a quotation letter on February 12, 2015, which set forth the amounts that would be payable to petitioner and her beneficiary under all the available options. Moreover, the Division advised petitioner, "[o]nce you retire, you cannot change your payment method option." The quotation further states, "[i]f you choose payment method options A, B, C, D, 2, 3, or 4, under no circumstances can you change your beneficiary selection once you retire, even if your beneficiary dies before you." Moreover, when the Board approved petitioner's retirement on February 18, it advised her she would have thirty days after the effective date of her retirement

or the date of the Board's approval, whichever is later, to "make any changes to [her] retirement." The thirty-day time period expired on March 20, 2015.

The Board argues that while it has the inherent authority to reopen administrative matters upon a showing of good cause, reasonable grounds, and reasonable diligence pursuant to Minsavage, 240 N.J. at 108-09, it determined here petitioner had made no such showing and declined to reopen her application. The Board submits that notwithstanding the serious allegations against Rick, the Board is in no position to accept or reject those claims or change a beneficiary on this basis. Moreover, the parties' agreement in the MSA does not transform an irrevocable designation into a revocable one. Stated differently, petitioner's divorce—four years after she made her pension selection—does not abrogate the statutory and regulatory irrevocability of her initial designation.

## III.

Our role in reviewing the decision of an administrative agency is limited. In re Stallworth, 208 N.J. 182, 194 (2011) (citing Henry v. Rahway State Prison, 81 N.J. 571, 579 (1980)). We accord a strong presumption of reasonableness to an agency's exercise of its statutorily delegated responsibility, City of Newark v. National Resource Council in Department of Environmental Protection, 82 N.J. 530,

539 (1980), and defer to its fact-finding.  Utley v. Bd. of Rev., Dep't of Lab., 194 N.J. 534, 551 (2008).  We will not upset the determination of an administrative agency absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies.  Lavezzi v. State, 219 N.J. 163, 171 (2014); Campbell v. Dep't of Civ. Serv., 39 N.J. 556, 562 (1963).

On questions of law, our review is de novo.  In re N.J. Dep't of Env't Prot. Conditional Highlands Applicability Determination, Program Int. No. 435434, 433 N.J. Super. 223, 235 (App. Div. 2013) (citing Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).  We are "in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue."  Mayflower Sec. Co. v. Bureau of Sec. in Div. of Consumer Affairs of Dep't of Law & Pub. Safety, 64 N.J. 85, 93 (1973).

### A.

The cases relied upon by petitioner are distinguishable from the facts in this matter.  In Van Orden, the plaintiff filed his application for retirement on April 10, 2003, seeking a retirement allowance based on an anticipated retirement from service as of July 1, 2003.  383 N.J. Super. at 413.  Significantly, however, at the time he applied for retirement, he was engaged in matrimonial

litigation. Ibid. In his initial application, he selected a payment option that would provide him with the maximum benefits during his life, but no payments to his wife in the event of his death. Id. at 413-14. The plaintiff's wife filed a motion in the Family Part arguing the plaintiff improperly changed his pension designation, and the Family Part judge agreed. Ibid. The court ordered the plaintiff to file an amended application and to name his wife as a beneficiary. Id. at 415. The plaintiff complied with the court order and filed the amended application on August 1, 2003—within thirty days of PERS approving his initial application. Ibid.

The final judgment of divorce was entered on February 3, 2004, wherein the plaintiff's wife relinquished all interest in the plaintiff's pension. Ibid. The plaintiff sought to revive his original pension benefit selection on February 10, 2004, which would have provided him with the maximum benefit along with no death benefit being provided to his beneficiary. Ibid. The Board denied the plaintiff's application because he did not request the change within the requisite time period pursuant to N.J.A.C. 17:2-6.3. Id. at 416. We reversed and noted the Board was mistaken when it concluded it was powerless to consider appellant's unique circumstances to determine whether there was good cause to reopen or modify the plaintiff's pension option. Id. at 418. Moreover, because

the Board did not consider the equities presented by appellant's unique circumstances, we determined the Board erred as a matter of law. Id. at 419.

We noted the petitioner in Van Orden presented a compelling argument for reopening the proceedings because he was ordered by a judge to change his pension selection during the course of the divorce proceeding. Id. at 421. "[Petitioner] dutifully followed the court's command and made the change, protecting his wife's potential interest." Ibid. When the plaintiff's wife later relinquished her interest, the plaintiff was unable to undo the "court-mandated selection" to reinstate his original pension choice.

The facts before us here are far afield from Van Orden. PERS provided petitioner documents that informed her the selection of the pension option was permanent. Moreover, while petitioner's health status and divorce subsequent to her pension selection are unfortunate, they are not the type of compelling or unique circumstances that we contemplated in Van Orden. The petitioner in Van Orden was forced by the court to change his pension selection from his original choice. Petitioner here was not compelled in any manner to change her pension selection, and when she did attempt to do so, it was four years after she received her pension. Accordingly, we find no merit in petitioner's reliance on that case.

A-2398-20

Similarly, petitioner's reliance on Steinmann and Minsavage is unavailing. Steinmann involved a teacher who applied for retirement benefits after twenty-five years of service. 116 N.J. at 566. She fell while teaching a class and suffered injuries, which prompted her to apply for retirement. Ibid. Accordingly, Steinmann was eligible for early or deferred retirement based on her twenty-five years of service. Id. at 568. In addition, she could have applied for accidental-disability benefits, and if rejected, she could have qualified for ordinary-disability benefits. Ibid. Her options were further complicated by the fact that a workers' compensation award reduced accidental- and ordinary-disability benefits and, therefore, the calculation had to await an adjudication of the workers' compensation claim. Ibid. Importantly, the Court determined the Board did not inform Steinmann that ordinary-disability benefits would be subject to an offset by a workers' compensation award or that she could convert to early retirement and thereby avoid any offset. Id. at 570. The Court therefore reversed the Board's decision denying Steinmann's conversion request. Id. at 578. The Court determined Steinmann could not have made an informed choice about her retirement until she knew the amount of her workers' compensation award. Id. at 575. Specifically, the Court noted, "it was the Board's regulation, combined with its failure to provide . . . Steinmann with information material to

her decision, that prevented the petitioner from selecting her retirement option with adequate knowledge of the relevant facts." Id. at 576.

The facts in Steinmann are distinguishable from petitioner's case. The plaintiff in Steinmann had a pending workers' compensation claim at the time she applied for her pension and the Board did not tell her this impacted her selection. Here, petitioner did not receive inaccurate information from the Board and only sought to change her pension options because of life circumstances occurring long after her pension selection.

In Minsavage, the Supreme Court addressed whether a widow could modify the retirement application of her recently deceased husband, even though his application was never approved because he selected a retirement option for which he was ultimately ineligible. 240 N.J. at 105. David Minsavage died of cancer after he accumulated twenty-four years and nine months of teaching service—just short of the twenty-five years required for an early retirement. Ibid. Because he did not qualify for his retirement selection, the Board determined his wife was only entitled to reimbursement of his pension contributions and a group life insurance benefit. Id. at 106. The Court noted while the husband did not live long enough to qualify for early retirement, his family would have been entitled to greater benefits had he selected and qualified

for ordinary disability on his retirement application.  Ibid.  The Court indicated the Board acted unreasonably by denying the wife's request to modify the retirement and that she should have been given an opportunity to at least present evidence to prove she exercised reasonable diligence to modify her husband's pension selection.  Id. at 110.  The Court concluded that such proof must include evidence that her husband qualified for ordinary disability retirement, and that, but for his incapacity, he would have changed his retirement selection to ordinary disability.  Ibid.

Minsavage turned on the potential incapacity of the husband and its impact on his ability to correct his pension retirement selection.  That is very different from petitioner's claims in this case, where there is no suggestion she chose the incorrect pension option at the time she applied.  Rather, she is seeking to change her pension options because of her post-retirement divorce and unfortunate illness, both of which occurred long after she selected her pension.

B.

Generally, a "member shall have the right to withdraw, cancel, or change an application for retirement at any time before the member's retirement allowance becomes due and payable . . . by sending a written request signed by the member."  N.J.A.C. 17:2-6.3(a).  "A member's retirement allowance shall

A-2398-20

not become due and payable until 30 days after the date the Board approved the application for retirement . . . ." N.J.A.C. 17:2-6.2. As noted above, however, our courts have recognized the Board may honor a petitioner's request to reopen a retirement selection upon a showing of "good cause, reasonable grounds, and reasonable diligence[.]" Steinmann, 116 N.J. at 573.

The Board's power to reopen proceedings is not at issue in this case. Rather, it is whether petitioner's circumstances were sufficient to establish good cause to reopen the pension selection. In our view, petitioner has not established good cause. The cases discussed above in which our courts have directed the Board to allow a petitioner to change their pension option involve unusual circumstances involving the initial pension selection, and petitioner's claims do not implicate the same principles articulated in those cases so as to establish good cause. The "unique and individual circumstances" contemplated by these cases that required the Board to reopen a pension option selection involved issues surrounding the pension selection process itself. However, they did not include personal circumstances or hardships, no matter how unfortunate, that occur years after the pension selection and that have nothing to do with the original selection of the pension option. That is, the distinguishing factor in

these cases is that they all involved issues encountered by the petitioners at or around the time of their initial pension selection, unlike petitioner here.

We noted in <u>Van Orden</u> the circumstances there were "unique and, therefore, unlikely to frequently reoccur." 383 N.J. Super. at 422 n.7. Petitioner's divorce and illness after several years of collecting her pension is not a unique situation that is unlikely to reoccur.[3] We are mindful of the Board's "need to preserve the actuarial integrity of the pension system and that such need underlies the prohibition against changing payment options after [a pension] becomes due and payable." <u>Ibid.</u> The Board's decision here was consistent with that goal and was not arbitrary, capricious, or unreasonable under the circumstances.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[3] We hasten to add that our decision should not be interpreted as barring petitioner from seeking relief in the Family Part consistent with Rick's waiver of petitioner's survivor benefit, including establishing a constructive trust to benefit petitioner's daughter should petitioner predecease Rick.

A-2398-20