**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0945-21

IN THE MATTER OF THE DENIAL
OF A PERMIT FOR STANDARD
WELLNESS, CO., NJ, LLC TO
OPERATE AN ALTERNATIVE
TREATMENT CENTER
PURSUANT TO THE 2019
REQUEST FOR APPLICATION
PROCESS.

_____

Argued October 11, 2023 – Decided December 8, 2023

Before Judges Whipple, Mayer and Enright.

On appeal from the New Jersey Cannabis Regulatory Commission.

Leo J. Hurley, Jr., argued the cause for appellant Standard Wellness, Co., NJ, LLC (Connell Foley LLP, attorneys; Leo J. Hurley, Jr., and Alexa C. Salcito, on the briefs).

Jacqueline R. D'Alessandro, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Jacqueline R. D'Alessandro, on the brief).

PER CURIAM

Appellant Standard Wellness, Co., NJ, LLC (Standard) appeals from an October 15, 2021 final agency decision issued by respondent New Jersey Cannabis Regulatory Commission (CRC) denying its application for a vertically integrated permit (VIP)[1] to operate an alternative treatment center (ATC) pursuant to the 2019 Request for Applications (RFA). Standard's appeal challenges the CRC's decision declining to increase the number of VIPs despite increasing the number of cultivation and dispensary permits. We affirm.

We incorporate the relevant facts from the three back-to-back companion cannabis permit cases presented to the panel on October 11, 2023. See I/M/O Denial of the Dispensary Permit Endorsement for AP NJ Health, LLC, No. A-0783-21 (App. Div. Dec. 8, 2023); I/M/O Denial of the Dispensary Permit Endorsement for Green Leaf Medical of New Jersey, LLC, No. A-0943-21 (App. Div. Dec. 8, 2023); I/M/O Denial of the Dispensary Permit Endorsement for NJ Holistic Health, LLC, No. A-1326-21 (App. Div. Dec. 8, 2023).[2] In brief, under

---

[1] A VIP includes a cultivation endorsement, a manufacturing endorsement, and a dispensary endorsement.

[2] While Rule 1:36-3 generally precludes reference to unpublished opinions, we may refer to an unpublished decision for case history or application of preclusionary legal principles. See Animal Prot. League of N.J. v. N.J. Dep't of Env't Prot., 423 N.J. Super. 549, 556 n.2 (App. Div. 2011) (citing Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:36-3 (2011)).

the RFA, the CRC sought applications for cultivation permits, dispensary permits, and VIPs. The CRC stated it would seek up to five cultivation permits, fifteen dispensary permits, and four VIPs, including one VIP in each region—North, Central, and South—and an additional VIP in the region with the greatest need. Standard timely filed a complete application for a VIP in the North region

In our consolidated opinion on the back-to-back cannabis permit cases, we described, in detail, the process adopted by the CRC for reviewing permit applications to operate ATCs. The CRC assigned scores for each application based on specific scoring criteria applied equally to all applicants. Upon completion of scoring, the CRC doubled the number of dispensary and cultivation permits to be issued. However, the CRC declined to increase the number of VIPs because Jake Honig's Law, N.J.S.A. 24:6I-7.1(a), expressly limits the number of VIPs to a maximum of four.

The CRC awarded VIPs to the highest-scoring applicant in each of the three regions and the fourth VIP to the highest-scoring applicant not previously selected "based on overall score and patient need." Standard was not selected to receive a VIP.

On appeal, unlike the other back-to-back cannabis cases, Standard does not challenge its assigned score. Rather, Standard argues the CRC's decision

not to increase the number of VIPs was arbitrary, capricious, and unreasonable. It further asserts the CRC failed to follow rule-making procedures by increasing the number of permits allocated for cultivation and dispensary providers,[3] but not for VIPs. Additionally, Standard contends the CRC failed to provide an adequate rationale for declining to increase the number of VIPs despite doubling the number of cultivation and dispensary permits. We reject these arguments.

Our review of an agency decision is limited. In re Herrmann, 192 N.J. 19, 27 (2007). An administrative agency's final quasi-judicial decision "will be sustained unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record." Saccone v. Bd. of Trs., Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

When reviewing whether an agency decision is arbitrary, capricious, or unreasonable, we consider: (1) whether the agency action violated "express or implied legislative policies"; (2) whether there was substantial evidence in the record to support the agency's decision; and (3) whether in applying the law to the facts, the agency reached a conclusion "that could not reasonably have been

---

[3] The CRC did not increase the number of dispensary permits until December 2021, well after it denied Standard's VIP application.

A-0945-21

made on a showing of the relevant factors." <u>Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n</u>, 234 N.J. 150, 157 (2018) (quoting <u>In re Stallworth</u>, 208 N.J. 182, 194 (2011)). If the agency satisfies these requirements, we "owe[] substantial deference to the agency's expertise and superior knowledge of a particular field." <u>Herrmann</u>, 192 N.J. at 28.

We may depart from such deference "when an agency's decision is manifestly mistaken." <u>Outland v. Bd. of Trs. of the Teachers' Pension & Annuity Fund</u>, 326 N.J. Super. 395, 400 (App. Div. 1999). However, there is a "strong inclination" to "defer to agency action that is consistent with the legislative grant of power." <u>Lower Main Street Assocs. v. N.J. Hous. & Mortg. Fin. Agency</u>, 114 N.J. 226, 236 (1989). This preference "is even stronger when the agency has delegated discretion to determine the technical and special procedures to accomplish its task." <u>In re Application of Holy Name Hosp. for a Certificate of Need</u>, 301 N.J. Super. 282, 295 (App. Div. 1997). Our Legislature's delegation of power to an agency is "construed liberally when the agency is concerned with the protection of the health and welfare of the public." <u>Barone v. Dep't of Hum. Servs.</u>, 210 N.J. Super. 276, 285 (App. Div. 1986).

We also defer to an agency's "technical expertise, its superior knowledge of its subject matter area, and its fact-finding role." <u>Messick v. Bd. of Rev.</u>, 420

5

N.J. Super. 321, 325 (App. Div. 2011). Such deference "is only as compelling as is the expertise of the agency, and this generally only in technical matters which lie within its special competence." In re Application of Boardwalk Regency Corp. for a Casino License, 180 N.J. Super. 324, 333 (App. Div. 1981).

The CRC, as the successor agency to the Department of Health, has the discretion to decide "whether the issuance of a permit to a particular applicant would be consistent with the purposes of [N.J.S.A. 24:6I-1 to -16]," and to determine "the kind and amount of information necessary to process permit applications." Nat. Med., Inc. v. N.J. Dep't of Health & Senior Servs., 428 N.J. Super. 259, 263 (App. Div. 2012). Applying the governing case law, we are satisfied neither the CRC's decision declining to increase the number of VIPs nor its denial of Standard's VIP application was arbitrary, capricious, or unreasonable.

An administrative agency should "articulate the standards and principles that govern [its] discretionary decisions in as much detail as possible." Van Holten Grp. v. Elizabethtown Water Co., 121 N.J. 48, 67 (1990) (quoting Crema v. N.J. Dept. of Env't Prot., 94 N.J. 286, 301 (1983)). An agency must make findings "to the extent required by statute or regulation, and provide notice of those [findings] to all interested parties." In re Issuance of a Permit by Dep't of

Env't Prot. to Ciba-Geigy Corp., 120 N.J. 164, 173 (1990).  However, "[a]ll of the evidential data" submitted to an agency "need not be repeated or even summarized, nor need every contention be exhaustively treated."  In re Application of Howard Sav. Inst. of Newark, 32 N.J. 29, 53 (1960).  A decision "is sufficient if it can be determined from the document without question or doubt what facts and factors led to the ultimate conclusions reached."  Ibid. Even where an agency's findings are not as "full and well organized" as they could be, if we are able to understand the meaning of, and the reasons for, the decision, there is no reason for a remand.  Ibid.

In accordance with its legislative mandate, the CRC updated projections from its 2017/2018 Biennial Report[4] to ensure patients had sufficient access to medicinal cannabis statewide.  The update was prompted by the following factors:  "the occurrence of the COVID-19 pandemic, the stays imposed by the Appellate Division on the RFA review process . . . [and] the delays in resolving the appeals for which the stays were issued."  As part of its update, the CRC calculated the total canopy space required to meet patient needs in the marketplace in 2021 and concluded

> [d]oubling the number of cultivators . . . [was] consistent with the statutory charge and authority of the

---

[4] This report was issued on April 1, 2019 and covered the years 2017 and 2018.

A-0945-21

> [CRC] to meet patient need, reflective of expansion of the patient population over the last two years, the projected expansion in the future, and the anticipated loss of capacity due to medicinal cannabis businesses redirecting resources to the launch of Personal-Use cannabis sales in the future.

Because it had the statutory authority to determine the number of permits to be issued and "[t]o keep pace with expanding patient enrollment," the CRC decided doubling the number of cultivation permits would address the gap between patient enrollment and access to medicinal cannabis. Further, the CRC concluded an increase in the number of cultivation permits would increase the square footage of growing canopy in the market "to provide the patient population with access to diverse products at affordable prices." Further, by doubling the number of permits for cultivators, the CRC noted additional competition would correspondingly provide patients with the ability to find the medicinal cannabis products they desired at a price they could afford.

The CRC declined to increase the number of VIPs because Jake Honig's Law expressly limits the number of VIPs to a maximum of four. The law provides:

> [U]p to four [ATC] permits issued by the commission after [July 2, 2019] . . . pursuant to a[n RFA] published in the New Jersey Register prior to [July 2, 2019] shall be deemed to concurrently hold a medical cannabis cultivator permit, a medical cannabis manufacturer

permit, and a medical cannabis dispensary permit; of these permits, one permit shall be issued to an applicant located in the northern region of the State, one permit shall be issued to an applicant located in the central region of the State, and one permit shall be issued to an applicant located in the southern region of the State.

[N.J.S.A. 24:6I-7.1(a).][5]

Although the CRC's rationale for declining to increase the number of VIPs might not have been as fulsome as Standard desired, we are satisfied there was sufficient evidence in the record to support the CRC's determination. Additionally, because the CRC's decision was consistent with its legislative mandate, it is entitled to deference. Thus, we are satisfied the CRC's declining to increase the number of VIPs, resulting in the denial of Standard's VIP application, was not arbitrary, capricious, or unreasonable.

We next consider Standard's argument that the CRC failed to follow proper rule-making procedures when it increased the number of cultivation and dispensary permits. We reject this argument.

Because the CRC has the statutory authority to address the number of permits required to meet patients' needs for medicinal cannabis, the rule-making

---

[5] N.J.S.A. 24:6I-7.1(a) explicitly states that it applies to permits issued after July 2, 2019 under an RFA issued prior to July 2, 2019. Therefore, the statute unequivocally limited the number of VIPs that could be issued in this case to a maximum of four.

requirements under the Administrative Procedures Act, N.J.S.A. 52-14B-5, are inapplicable. See Dragon v. N.J. Dep't of Env't Prot., 405 N.J. Super. 478, 493 (App. Div. 2009) (noting "it is the court's function to interpret an agency's enabling statute to determine whether the agency's actions are consistent with the policy established by the Legislature or exceed the scope of the agency's jurisdiction."). Additionally, the CRC explained why it increased the number of cultivation permits but not VIPs. That Standard disagrees with the CRC's reasoning does not allow this court to alter a discretionary decision expressly delegated to the agency by the Legislature.

The number of VIPs to be issued under the 2019 RFA was limited to one in each region—North, Central, and South—and an additional VIP in the region with the greatest need for a total of four VIPs. The statute expressly limited the number of VIPs to be issued by the CRC to four. If Standard believes that number is insufficient to provide statewide access to individuals requiring medicinal cannabis, it should direct a request for additional VIPs to the Legislature.

To the extent we have not addressed any of Standard's remaining arguments, those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

A-0945-21

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION